People of the State of Illinois, Defendant in Error, v. Homer Chatman, Plaintiff in Error.

Gen. No. 42,682.

Heard in the third division of this court for the first district at the June term, 1943. Opinion filed April 26, 1944.

B. G. Clanton, of Chicago, for plaintiff in error.

Thomas J. Courtney, State's Attorney, for defendant in error; Edward E. Wilson, John T. Gallagher, Melvin S. Rembe and Joseph A. Pope, Assistant State's Attorneys, of counsel.

Mr. Presiding Justice Hebel delivered the opinion of the court.

An information filed in the municipal court of Chicago charged that on October 2, 1942 Homer Chatman wilfully, wickedly, maliciously and scandalously had in his possession certain lewd, wicked, scandalous, obscene and immoral literature, to the manifest corruption of public morals, in contempt of the People and the law, to the evil example of all persons and the public generally.

Defendant pleaded not guilty and a motion to suppress certain evidence was denied.

Defendant waived trial by jury. In a trial before the court he was found guilty. Motions for a new trial and in arrest of judgment were overruled. The court entered judgment on the verdict and sentenced the defendant to serve six months in the county jail. He prosecutes this writ of error to reverse the judgment.

William L. Bailey, called as a witness on defendant's motion to suppress certain evidence, testified that he was a police officer of the city of Chicago; that he placed the defendant under arrest on October 2, 1942 at about 10:00 p. m.; that the defendant was then walking on the street; that he had a radio under his arm; that witness asked him what was under his arm and he said, "a radio"; that he asked him if he had a bill

of sale for the radio; that defendant searched his pockets and could not find the bill of sale; that the witness asked him where he got the radio; that defendant answered he purchased it; that defendant told the witness to come over to his house and he would show him the bill of sale; that witness did not have a warrant for the arrest of defendant; that witness "caused him to go back to his home"; that witness had no warrant to search the premises; that when witness and defendant got near to defendant's house defendant "snatched loose and ran up to the second flight and slammed the door"; that witness rapped and said, "Where is the bill of sale?"; that defendant said, "Just a minute, I will open it, don't break it down"; defendant opened the door; the witness said, "Where is the bill of sale?"; that defendant said, "Look in that box on top there and you will find the bill of sale"; and that when witness looked in the box he found a package containing obscene literature. This was all the evidence heard on the motion to suppress.

On the trial Officer Bailey testified that at the time defendant was carrying the radio it was wrapped in brown paper. He further testified that when defendant got near to his home he ran, entered his apartment on the second floor and "slammed and locked the door." Certain exhibits, said to be obscene and immoral literature were seized by the police when they were admitted to the apartment. After defendant entered his apartment it was five or six minutes before he opened the door.

Vincent Bentivenga, a witness for the defendant, testified that defendant had a good reputation for honesty and morality and for being a law-abiding citizen.

The defendant, testifying in his own behalf, stated that he was a government employee; that he lived in Chicago since 1917; that he had never previously been arrested or charged with any crime; that when the police officer stopped him and asked him about the radio,

he stated that it was his, and that he had a bill of sale for it; that while on the street he showed the bill of sale to the police officer; that nevertheless they forced him to go to his home; that they forced him to open the door; that he took his keys out and opened the door; that after he got in he closed it; that the officer kept "hitting on the door and said that if you don't open it I will shoot"; that while the door was locked and while defendant was inside the officer knocked on the door and said that if defendant did not open it he would break the door; that he then opened the door and that the exhibits were obtained by Officer Bailey without permission from defendant.

Michael P. Naughton, a captain of police, called by the People, testified that he told Officer Bailey that he had information that "this man was dealing in obscene literature," and "to go out into the neighborhood" and find out if he was violating the law and then, if he was, to take him into custody.

It is obvious that Officer Bailey did not have any ground for arresting the defendant while he was walking on the sidewalk. The officer suspected that defendant was guilty of larceny of the radio. He had no reasonable basis for this suspicion. Arrest without warrant on bare suspicion is unlawful.

According to the officer's testimony he accompanied defendant toward the latter's home. The defendant broke away and entered his home, locking the door. The officer knocked, endeavoring to gain admittance. Defendant testified that he refused to admit the officer but finally did so when the officer threatened to break down the door. The exhibits on which the conviction of the defendant is based were obtained by the search made after the entry into defendant's home.

It is clear to us that the defendant did not freely admit Officer Bailey but that the door was opened only because defendant was coerced. The record clearly shows an unlawful arrest and an unlawful search.

The evidence shows clearly that defendant was the owner of the radio and he exhibited a bill of sale showing such ownership to the police officer. The gaining of admission to defendant's apartment was accomplished through the subterfuge of first arresting him on the pretense that he was guilty of larceny of a radio when in fact the police officer had no reasonable ground for so believing and then of unlawfully entering his dwelling. We find that both the arrest and the search were unlawful. The trial court should have sustained the motion to suppress the evidence so unlawfully obtained.

The judgment of the municipal court of Chicago is reversed.

*Judgment reversed.*

Burke and Kiley, JJ., concur.