(No. 37199.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* BENNIE JONES, Plaintiff in Error.

*Opinion filed May 20, 1964.*

ARTHUR D. NORDENBERG, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and ELMER C. KISSANE and RICHARD T. BUCK, Assistant State's Attorneys, of counsel) for the People.

Mr. JUSTICE DAILY delivered the opinion of the court:

Defendant, Bennie Jones, was found guilty of burglary after submitting to a jury trial in the criminal court of Cook County and was sentenced to the penitentiary for a term of not less than 7 nor more than 20 years. He prosecutes this writ of error contending, first, that the trial court erred in refusing to suppress certain evidence allegedly obtained as the result of an unlawful search and seizure and, second, that the admission of oral confessions into evidence was a denial of due process of law under the circumstances of the case.

Facts relevant to defendant's first contention show that during the midday hours of February 14, 1959, the apartment of George W. Krumhaar, located in the city of Evans-

ton, was burglarized and that a camera, chest of silverware, a radio, woman's coat and two watches were stolen. About 4:30 P.M. of the same day Chicago detectives Elmer Perkins and Elbert Banks, who had no knowledge of the Evanston burglary, were in the vicinity of 61st Street and Calumet Avenue in the city of Chicago investigating a burglary which had occurred two days before, and in which such items as a camera, silverware, radio, jewelry and clothing had been taken. In addition, the officers had information that a "fence," or receiver of stolen goods, was operating in the area and that such person was exchanging narcotics for stolen property.

While parked in a black and white police vehicle, unmarked except for a distinctive sticker on the windshield, the officers observed defendant emerge from an elevated station located at 61st Street between Calumet and Prairie avenues. He was shabbily dressed and, in the opinion of Perkins, his general appearance, walk, and demeanor were those of a narcotics addict. Defendant passed by the front of the officers' car, glancing at them as he did so, and at this time they could see a silverware chest or case protruding from one of two open-topped shopping bags he was carrying, and a camera slung on his shoulder. When defendant boarded a bus, the officers decided to follow on the chance that he would lead them to the receiver of stolen goods.

Defendant left the bus at 60th and Blackstone and entered a drug store, whereupon the officers parked their car in front of the store and waited. From their vantage point they could observe defendant inside the store and it appears that he did no more than to stand at a front window and to gaze in the direction of the police vehicle. After this had gone on for ten minutes, the officers entered the store and questioned defendant. What transpired is in conflict.

According to officer Perkins, as he approached defend-

ant the latter was still carrying the camera over his shoulder and was holding one of the shopping bags, while the other was on the floor beside him. Through the open tops of the bags, the officer could see "without any trouble" a silver chest or case and a radio in one bag, and a woman's blue coat in the other. Perkins said he identified himself as a police officer and that, upon questioning, defendant said the articles belonged to his wife, who was working, and that they were in the process of moving their place of residence. When defendant was unable to supply the name, address or telephone number of his wife's employer, and when he did not deny the officer's charge that he was an addict, Perkins told him he was under arrest for investigation of charges of narcotics and burglary. He was thereupon taken to a police station where, by Perkins' testimony, he voluntarily surrendered two watches which were on his person. Later, the watches, camera, radio, silverware chest and coat were identified as those stolen from the Krumhaar apartment.

Under defendant's version of the events occurring in the drug store, the first act of the officers, who did not identify themselves, was to order him to take off his coat and to roll up his sleeves, after which they accused him of being a narcotics addict and sought to question him about a woman in the area who was selling narcotics. In this regard, defendant admitted at the trial that he was a narcotics addict and that there were "tracks" on his arm. He said he denied knowledge of such a woman, or that he was in the area to purchase narcotics, and that the officers then took him outside to the car. There, according to defendant but denied by the police, the officers sought to persuade him to make a purchase of narcotics from the woman and, when he refused, started questioning him about the "packages" in his possession and accused him of having committed a burglary. Defendant also denied having told the officers that the articles in the shopping bags belonged to his wife, but testified that the contents of the bags were unknown to him, and

that he had explained to the officers that a man named Wright had paid him $6 to deliver the bags to a man he was to meet at the drug store. At one time defendant testified that the name of the deliveree was "Sonny" and that he didn't know him by any other name; on another occasion he said the bags were to be delivered to a man named "Red."

Defendant contends that his arrest and the subsequent search and the seizure of the camera, silverware chest and other items were in violation of his constitutional rights; that the evidence so obtained was incompetent; and that his motion to suppress the evidence should have been granted. There was no search, since the camera, radio and other articles were not concealed from the view of the police, (*People* v. *Elmore,* 28 Ill.2d 263; *People* v. *Woods,* 26 Ill.2d 557,) however, their seizure and defendant's subsequent voluntary surrender of the two watches cannot be divorced from the question of the lawfulness of defendant's arrest, which becomes the decisive and controlling issue in the case. *Cf. People* v. *Roebuck,* 25 Ill.2d 108.

The applicable law is not in dispute for it has long been settled that an arrest without a warrant is lawful if a criminal offense has in fact been committed and the arresting officer has reasonable grounds for believing the person to be arrested committed it. (Ill. Rev. Stat. 1959, chap. 38, par. 657; *People* v. *Boozer,* 12 Ill.2d 184.) And while a completely satisfactory and inflexible definition of what constitutes reasonable grounds is not possible to formulate, it is generally agreed that reasonable grounds or probable cause for arrest exists if the facts and the circumstances known to the officer would warrant a prudent and cautious man in believing that the person arrested was guilty of an offense. (*People* v. *Ford,* 356 Ill. 572; *Henry* v. *United States,* 361 U.S. 98, 4 L. ed. 2d 134.) The difficulty, as was noted in *People* v. *La Bostrie,* 14 Ill.2d 617, lies in applying the law to the facts of each case, or, more realistically, in determining if the facts and circumstances of the particular

case give rise to reasonable grounds or probable cause for arrest.

It is certain that mere suspicion, common rumor or report do not afford probable cause for arrest, (*People* v. *Pitts,* 26 Ill.2d 395; *United States* v. *Di Re,* 332 U.S. 581, 92 L. ed. 210,) yet, at the same time, reasonable cause means something less than evidence which would result in a conviction, and it is also established that reasonable cause may be founded upon evidence that would not be admissible at the trial. (*People* v. *La Bostrie,* 14 Ill.2d 617; *Brinegar* v. *United States,* 338 U.S. 160, 93 L. ed. 1879; *Husty* v. *United States,* 282 U.S. 694, 75 L. ed. 629.) Again, it has been stated that existence of reasonable cause which will justify an arrest without a warrant depends upon "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." (*Brinegar* v. *United States,* 338 U.S. 160, 175, 93 L. ed. 1879.) But at the same time it has been observed that police officers "often must act upon a quick appraisal of the data before them, and the reasonableness of their conduct must be judged on the basis of their responsibility to prevent crime and to catch criminals." *People* v. *Watkins,* 19 Ill.2d 11, 19.

Measuring by these standards, and turning to the question whether prudent and cautious men in the shoes of the officers would have reasonable grounds for believing that defendant had committed a crime, it is our opinion the arrest was lawful here even though made without a warrant. While defendant indulges in the *ad terrorem* appeal that the record presents the case of a citizen being arrested on mere suspicion as he walked along the public street with commonplace articles of personal property in his possession, the evidence does not justify such an over-simplification of the officers' knowledge and the situation confronting them.

The officers had knowledge that, two days prior to defendant's arrest, a burglary had occurred in the area in

which they were working and that such items of personal property as a camera, radio, silverware and clothing had been stolen. And just as important, the officers were possessed of knowledge that a receiver of stolen goods, who would exchange for narcotics, was operating in the vicinity where defendant was observed to loiter with articles of personal property in his possession matching those taken in the burglary. In principle, the latter circumstance cannot be distinguished from the situation in *Carroll* v. *United States,* 267 U.S. 132, 69 L. ed. 543, where it was held that information possessed by prohibition agents, together with the judicially noticed fact that Detroit was "one of the most active centers for introducing illegally into this country spirituous liquors for distribution into the interior," (267 U.S. at 160,) was an element contributing to probable cause for arrest and search without a warrant. See also: *Brinegar* v. *United States,* 338 U.S. 160, 167, 93 L. ed. 1879, where the same weight was accorded to the knowledge of an agent that "Joplin, Missouri, was a ready source of supply for liquor and Oklahoma a place of likely illegal market * * *."

Coupled with the foregoing is the circumstance that defendant's gait and demeanor caused the officers to believe that he was a narcotics addict, and the further circumstance of his evasive and unsatisfactory explanation for the unusual assortment of personal property in his possession. It is a matter of common knowledge and experience, as well as judicial notice, that narcotics addicts turn to thievery as a way of meeting the financial demands their habit places upon them. Adding all of the circumstances together, we do not believe that defendant's arrest rested on a tenuous thread of suspicion. Rather, it is our opinion that men of prudence and caution having the same knowledge and faced with the same circumstances as the officers in this case would have reasonable grounds or probable cause to believe the defendant had committed a crime. The arrest

being lawful, the subsequent seizure was proper and defendant's motion to suppress was properly denied.

The decisions chiefly relied upon by defendant are factually distinguishable and in some instances solidify the conclusion we have reached. In *Henry* v. *United States,* 361 U.S. 98, 4 L. ed. 2d 134, wherein a divided court concluded there had been an illegal arrest and search, the defendant, who was suspected of theft from an interstate shipment of whiskey, was watched by Federal agents as he entered residential premises and loaded some cartons into his car. The agents stopped him, searched the car and discovered that the cartons contained radios, subsequently determined to have been stolen. The majority of the court concluded that the arrest and search were unlawful, but indicated that the result might have been otherwise if the cartons the agents saw being loaded had had the appearance of whiskey cartons, or had the cartons placed in the car been taken from "a terminal or from an interstate trucking platform," instead of a residence. Here, to the contrary, the items in defendant's possession were in plain and open view to the officers and matched items taken in the burglary two days prior, and the area where defendant was seen was one in which it was known there was traffic in stolen goods.

*People* v. *Chatman,* 322 Ill. App. 519, was a case where a man suspected of dealing in pornographic literature was stopped on the street while carrying a radio and arrested for stealing it, and where pornographic matter was discovered when the arrested man took the officer to his home in order to produce the bill of sale for the radio. In that case the officer had no knowledge that a crime involving the theft of a radio had been committed, let alone grounds for believing that the defendant had committed it, and it was plain that the arrest had been pure harrassment. In *People* v. *DeLuca,* 343 Ill. 269, where there was a strong dissent, the majority opinion turned on a finding that the search preceded the arrest, and that the arrest was improper be-

cause it was based upon the fruits of the unlawful search. There is no parallel here, inasmuch as the camera, radio and other items were in plain view when defendant was arrested Finally, *People* v. *Roebuck,* 25 Ill.2d 108, is even further removed from the present case. The defendant there was arrested without a warrant because he was allegedly "assembling" and "congregating" with undesirable persons in violation of a city ordinance, and it was held that his arrest was unlawful because walking down the street with one person, a known prostitute and narcotics addict, was not a violation of the ordinance.

Following his arrest, defendant was taken to a Chicago police station and thence to the Evanston station where, upon two occasions, he orally confessed his crime. At the trial, without objection by defendant, police officers involved testified to such confessions, or admissions of guilt, and it is now urged that the reception of such testimony denied defendant due process of law, first, because the confessions were the by-product of an unlawful arrest and, second, because they were obtained under coercive circumstances and were therefore involuntary. What has been said concerning the lawfulness of defendant's arrest disposes of the first contention, and the second is not properly before us for review because the confessions were never attacked on such ground in the trial court. (*People* v. *Carter,* 24 Ill.2d 413; *People* v. *Williams,* 26 Ill.2d 190.) Indeed, defendant's consistent position in the trial court was that he had confessed to nothing at all, but had told the Evanston police, as he did the Chicago police, that the articles found in his possession had been given to him by a man named Wright.

Finding no error in the respects charged, the judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*