**People of the State of Illinois, Appellee, v.
Major Diggs, Appellant.**

Gen. No. 50,796.

First District, Fourth Division.

March 31, 1967.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Marshall J. Hartman and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, Morton E. Friedman and Nicholas T. Pomaro, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE McCORMICK delivered the opinion of the court.

CHARGE: Attempted burglary.[1]

---

[1] Ill Rev Stats 1963, c 38, § 19–1. **Burglary.**

(a) A person commits burglary when without authority he knowingly enters or without authority remains within a building, housetrailer, watercraft, aircraft, motor vehicle as defined in the Illinois Motor Vehicle Law, approved July 11, 1957, as amended, railroad car, or any part thereof, with intent to commit therein a felony or theft.

(b) **Penalty.** A person convicted of burglary shall be imprisoned in the penitentiary for any indeterminate term with a minimum of not less than one year.

Ill Rev Stats 1963, c 38, § 8–4. **Attempt.**

(a) **Elements of the Offense.** A person commits an attempt when, with intent to commit a specific offense, he

DEFENSE AT TRIAL: Defendant denied guilt.

JUDGMENT: After a trial before a jury and the return of a verdict of guilty, the court sentenced the defendant to a maximum of 14 years and a minimum of 5 years.

POINTS RAISED ON APPEAL:

1. Improper exhibits were allowed to be taken by the jury to the jury room.
2. An oral confession by the defendant was improperly considered by the jury.
3. The prosecutor improperly expressed his personal opinion to the jury that the defendant was guilty.
4. Defendant was not proved guilty beyond a reasonable doubt.

EVIDENCE: Testimony of State's Witnesses.

Aaron Smith testified that he lived at 3153 West Fulton Street, in Chicago; that he had a radio and TV repair shop at 257 North Kedzie Avenue, which the defendant attempted to burglarize on November 28, 1964. He stated that there had been previous attempted burglaries, the last one having been on September 28 or 29, 1964. He stated that he had installed an "intercom" connection between his shop and his home, so that any noises occurring in the shop could be heard over the intercom. He testified that when he left the shop on

---

does any act which constitutes a substantial step toward the commission of that offense.

. . . . . .

(c) **Penalty.** A person convicted of an attempt may be fined or imprisoned or both not to exceed the maximum provided for the offense attempted.

November 28, 1964, he had properly secured all the doors and locks; that later when he was preparing for bed he heard a loud pounding noise coming from the shop over the intercom; that he told his wife to call the police, then he took a gun and a flashlight and went to the shop. He stated that he went down the "gangway" back of the shop and saw a man standing at the back door, with his arms over in the door between the bars, working on the door, trying to get at the lock behind a piece of metal placed in the door to protect the lock; that he told the man to turn around and put his hands up, and the man turned and put his hands up the side of the wall. Smith then identified the defendant as the man in question. His testimony continued as follows: He turned to see if anyone was with the defendant and at that time he saw the defendant about to strike him with a "shiny object" [the hacksaw which had been introduced in evidence]; he then shot the defendant in the left arm. The defendant fell, then got to his knees and said: "Please don't call the police because I just got out of jail and I don't want to go back. I can't wait until the police come." Smith told him he couldn't let him go because he had shot him.

Smith identified the State's exhibits, a hacksaw, a drill bit and a screwdriver. On cross-examination he testified that he saw the defendant's hands over inside the bars, working at the 12″ x 12″ plate that shields the lock to prevent burglary; that he saw the screwdriver in the defendant's hands, but did not see what he did with the screwdriver when he struck at Smith with the hacksaw. Smith stated that two or three squad cars arrived and he gave them a statement; he said he did not tell the police that he saw the defendant chipping mortar, nor did he make any statement either at the preliminary hearing or to the State's Attorney that he saw the defendant chipping brick. He stated

364

that after he shot the defendant he did not see what happened to the hacksaw or the screwdriver.

Ronald Nadile, a police officer, testified that early in the morning of November 28, 1964, in response to a call he went to the rear of 257 North Kedzie, where he was met by a police sergeant who had the defendant in custody. Nadile examined the premises and identified People's Exhibit 1 as a photograph of the rear door of the premises. He testified that he observed fresh marks near the hasp where bricks had been knocked out; that he found the hacksaw and the drill bit in a puddle of water, and the screwdriver a little distance from the other tools. He took the tools to the police station where they were inventoried. He stated that the evidence technician made a sketch of the area where the bricks had been chipped, which picture was introduced in evidence and which will be discussed later. Nadile stated that he noticed there was fresh concrete on the end of the drill. He then stated that the defendant was taken to the hospital by the police.

Calum MacRitchie, a police officer, testified that on November 28, 1964, at about 3:15 a. m., he went to the location in question in response to a radio call, and found that all persons involved had been taken to the police station; that he made a cursory examination of the premises and found that mortar had been taken from some bricks around the center of the door hinge; that he returned later and made a more thorough examination. In his report MacRitchie had stated that bricks had been removed from the ledges of the protective gate and the rear door of the store; that the bricks which were removed were split. He further testified that the next day he saw the defendant at the Bridewell Hospital; he believed he was sitting up at the time; that he questioned the defendant as to where he had been on the night in question; that the defendant said he had been drinking in a tavern next to a

currency exchange at Flournoy and Kedzie; that he left the tavern at about 2:00 a. m., and walked north on Kedzie; that he found tools in a garbage can (he couldn't say where), and when he came to the victim's store he decided to burglarize it. The tools were those which had been introduced in evidence.

In rebuttal, police sergeant Chester Zaprzalka testified for the State that on November 28 he went to Smith's store and saw the defendant with Smith; that he searched the defendant and did not find a hacksaw on his person although he did take the screwdriver and the drill off the person of the defendant. The officer stated that he was alone at the time and that another officer arrived on the scene a few minutes later.

**Testimony of Defendant.** The defendant testified as follows: On November 28, 1964, he was living at 3130 West Washington Street with a brother. He had been a sheet metal worker for about 12 years, but was not so employed on November 28; at that time he was doing maintenance work for his landlord in the building where he lived. He had left his home at about 9:30 on the evening of November 27, and had gone to 554 Kedzie to see a friend of another brother of the defendant, who was to drive him to the south side where he was to do some sheet metal work. He waited with the man's wife until 2:00 a. m., at which time the man (a musician who had been practicing with a group) told him he was too high to drive his car, and the defendant would have to take public transportation. He left the house at 554 Kedzie about 2:00 a. m., intending to take the "L" to the south side. He had been drinking gin since about 9:00 p. m., and when he left he had a bottle one-third full of gin. He also had with him the tools which he used in his sheet metal work—hacksaw, drill and screwdriver. It had been raining hard,

and he went into an alley in the 200 block on Kedzie, finished the gin, threw the bottle away, then went further down the alley in response to a call of nature. He was standing still when he heard a voice shout "Hey"; he spun around and felt a bullet hit him. He saw Smith and asked why he shot him; Smith said he believed he was trying to burglarize his store, and the defendant denied that he was doing that. A police sergeant and another police officer arrived, and the sergeant took the tools from the defendant's person. In his testimony the defendant stated that the sergeant had not testified that day in court. (He referred to Sgt. Zaprzalka who was called by the State in rebuttal.) He said the sergeant asked Smith why he shot him and Smith said the defendant had drawn back to attack him, which the defendant denied. The defendant further testified that the sergeant put the tools in the squad car, then one of the officers took the defendant to the hospital.

He continued to testify that the next morning at about 9:00 or 10:00 o'clock, the officer who testified (Mac-Ritchie) went to the hospital and talked to the defendant, telling him he was a detective and wanted to hear his story. The defendant's arm was in a sling; he was in bed, and had been given "sleeping pills or some type of pain killer that made me go to sleep." The officer asked him if he wanted to make a statement and the defendant told him he was sleepy and would talk to him later; that he did not want to make a statement, and the only statement he could make was that he was on his way home and was shot mistakenly. He told the officer he thought Smith shot him accidentally.

The defendant also testified that he had been convicted of a burglary in 1959 and sentenced to the State Reformatory of Indiana from two to five years; that he was released August 1, 1961. He denied that he

367

had attempted to break into the premises of Smith's shop, and stated that the tools in his possession were those he had been using for sheet metal work; that he carried the tools when he was doing any of that kind of work. On cross-examination he stated that he had told his brother who lived on the south side that if he couldn't get to his home before 11:00 p. m., at which time the brother went to bed, he would come at 4:00 a. m., when the brother would be getting up to go to work; that he intended to use his brother's car the next day to look for work.

OPINION:

■ 1. Defendant contends that improper exhibits were allowed to go back to the jury room. At the trial, over objection, Smith was permitted to put a mark on a photograph which was introduced as Plaintiff's Exhibit 1. The witness testified that the X which he had marked was to indicate where the brick had been chipped and where the mounting of the lock on the door was hanging loose. Officer Nadile also examined the photograph and pointed out to the jury "fresh marks . . . right by this hasp, where bricks were just knocked out, pieces of bricks were knocked out right by this hasp here, (Indicating)" and the officer indicated on the photograph the place where Smith had made the mark. The defendant argues that the jurors should not have been permitted to take with them to the jury room evidential material depending for their value on the credibility of the maker, and in support of that objection, cites People v. Spranger, 314 Ill 602, 145 NE 706. This case is not applicable because the Supreme Court found that the trial court erred in admitting the entire statement into evidence.

In People v. Allen, 17 Ill2d 55, 160 NE2d 818, the defendant argued that it was error for the trial court to allow the jury to take to the jury room several physi-

cal objects which had been admitted as exhibits into evidence. The court said:

> "It is well established that the matter of whether exhibits should be taken to the jury room is within the sound discretion of the trial judge and his ruling will not be disturbed unless there was an abuse of such discretion to the prejudice of defendant. (People v. Ciucci, 8 Ill2d 619.)"

The trial court committed no error in permitting the exhibits to be taken to the jury room.

■ 2. The defendant contends that an oral confession was improperly considered by the jury, and argues that officer MacRitchie should not have been permitted to testify to what the defendant told him at the hospital with respect to his being guilty of the burglary. The officer testified that at the time he questioned him the defendant was sitting up in bed; the defendant testified that he had been given pain killers and was sleepy, and does not remember making any inculpatory statements. No objection was made to the testimony of the officer, and no motion to suppress was made by defendant's counsel, nor did he call for a hearing on the admissibility of the confession. The defendant argues that nevertheless it was the court's responsibility to see that he was surrounded by all the safeguards of procedural due process. He predicates his argument on People v. Odom, 71 Ill App2d 480, 218 NE2d 116, where the court reversed a conviction. In that case the court found that the defendant's attorney was incompetent because he did not (1) file a motion to suppress certain evidence; (2) bring out any disparities in the evidence; or (3) file a motion to suppress a confession which was obtained under circumstances which raised a question of its voluntariness. In the case before us, since the defendant did not object

to the confession or move to suppress it in the trial court, he cannot do so here. People v. Lyons, 36 Ill2d 336, 223 NE2d 99; People v. Jones, 31 Ill2d 42, 198 NE 2d 821; People v. Carter, 24 Ill2d 413, 182 NE2d 197.

█ 3. In his closing argument the prosecutor said: "The evidence conclusively proves that the defendant, Major Diggs, is guilty of both counts in the indictment. In my opinion, he is guilty not only beyond a reasonable doubt but beyond any and all reasonable doubt." This statement was objected to by defense counsel. The court said: "He is giving his opinion from the evidence. Is that true, Mr. Knott?" The prosecutor said it was, and the court told him to proceed. The defendant contends that the prosecutor improperly expressed his personal opinion to the jury of defendant's guilt, and cites several opinions in support of the contention: People v. Cepek, 357 Ill 560, 192 NE 573; People v. King, 276 Ill 138, 114 NE 601; and People v. Fuerback, 66 Ill App2d 452, 214 NE2d 330. All of those cases lay down the commonly recognized rule of law that a prosecutor in his argument to the jury may not give his own personal opinion, unless based on the evidence, as to the guilt or innocence of the defendant. In People v. Williams, 26 Ill2d 190, 186 NE2d 353, the court said:

> "It is, however, proper for a prosecutor to argue or express his opinion that the accused is guilty, where he states, or it is apparent, as was true in this case, that such opinion is based solely on the evidence. People v. Lawson, 331 Ill 380, 394; People v. Black, 317 Ill 603; 15 ILP, Criminal Law, sec 586."

█ In People v. Lawson, 331 Ill 380, 163 NE 149, the court stated that while the state's attorney is not permitted to say to a jury that he believes a defendant is guilty beyond a reasonable doubt, "it is within his

discretion to state to the jury, after summing up the facts, that he believes from the evidence that the defendant is guilty beyond a reasonable doubt if there is any reasonable basis for such belief." The statement of the State's Attorney in the case before us was definitely based on the evidence and was not his independent conclusion outside of and beyond the evidence introduced in the trial of the case.

■ 4. The defendant contends that he was not proved guilty beyond a reasonable doubt. The testimony was that he was at the back of the shop; that he had with him tools which were suitable for chipping brick and breaking into the store. Smith testified that he saw the defendant with his hands inside the door; that while he couldn't see his hands because he was over in the door, he had his hands inside the bar and apparently was working on a metal plate which shields the door lock, and that he had a screwdriver in his hands at the time. There is also testimony in the record that the brick was chipped and that the lock was disturbed. The defendant's justification of his presence at the door was not impressive. In People v. Spagnolia, 21 Ill2d 455, 173 NE2d 431, the court said:

"We have often held that when 'a defendant elects to justify or explain his presence at or near the scene of a crime, while denying participation, he must tell a reasonable story or be judged by its improbabilities.' (People v. Lobb, 17 Ill2d 287, 294; see also People v. Malmenato, 14 Ill2d 52, 60; People v. Meyers, 412 Ill 136, 145.)"

■ In the case before us there is no question that the defendant was present at the scene of the alleged crime; the dispute is as to what he was doing there. State's witnesses say he was attempting to break into the shop; the defendant contends he was there on per-

371

sonal matters. The jury saw the witnesses and heard them testify, and in our opinion they were justified in finding that the defendant's guilt was proved beyond a reasonable doubt. The trial court had the same opportunity to observe the witnesses and hear their testimony, and refused to grant defendant a new trial.

DECISION:
The judgment of the Circuit Court is affirmed.

Affirmed.

ENGLISH, P. J. and DRUCKER, J., concur.