The People of the State of Illinois, Plaintiff-Appellee, v. William Hobson, Defendant-Appellant.

(No. 54882;

First District—September 10, 1971.

Gerald W. Getty, Public Defender, of Chicago, (Robert Armstrong, Senior Law Student, Shelvin Singer and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago (Nicholas Talbert, Robert A. Novelle and Stephen J. Connolly, Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE ENGLISH delivered the opinion of the court:

OFFENSE CHARGED

Robbery. Ill. Rev. Stat. 1967, ch. 38, par. 18—1.

JUDGMENT

After a bench trial, defendant was found guilty and sentenced to a term of two to six years.

CONTENTIONS RAISED ON APPEAL

1. The identification of defendant should have been suppressed as the product of an arrest made without probable cause.

2. The trial judge, in denying the motion to suppress the identification testimony, based his conclusion on irrelevant and contradictory facts.

3. Defendant was not proven guilty beyond a reasonable doubt.

OPINION

A consideration of defendant's first contention—that there was no probable cause for the arrest—necessitates our setting out the evidence adduced at the hearing to suppress the identification testimony.

*Frank Harmon*

On October 21, 1968, between noon and 3:00 o'clock, defendant and a man named Tucker took some money from him. When he was robbed, he called for help, a porter came through a door, saw the robbers, and followed them. About five minutes after he was robbed, police officers brought defendant and Tucker back to the witness for identification. The police did not say anything to him when defendant and Tucker were brought to him. The witness said, "those are the fellows," as soon as he saw them in the police car. He also identified Tucker and defendant in the courtroom.

*Joseph Danzl*

He is a police officer. On October 21, 1968, at about 1:45 P.M., he arrested defendant and Tucker. Thirty seconds to one minute prior to that time, a man named Benson had stopped his squad car and said that an old man "was just robbed by two colored guys." Benson said that they had run south on Morgan, then west on Monroe, and he pointed in that direction. The witness did not think Benson said anything else. He did not remember seeing anyone on the street in the location Benson pointed to. He later testified that he saw one other colored man on the street. The first time he saw defendant and Tucker, they were standing in a doorway at 1008 W. Monroe (just around the corner from Morgan). He and his partner asked them what they were doing, and they said they were visiting a friend. When asked the name of the friend, they replied that they did not know his name, and they did not indicate which apartment they had visited. Defendant was out of breath and the witness noticed excessive perspiration on his forehead. Tucker was not out of breath. They searched the doorway for money, but did not find any.

They told defendant and Tucker about the robbery and said that they wanted to bring them back to the scene to see if anyone would identify them. They escorted the two men to the squad car and placed them in the back seat. They then went to the corner of Morgan and Madison where they saw Benson who said, "those are the men that robbed the old man." They told Benson to get Harmon, and Benson returned moments later with Harmon who identified defendant and Tucker as the men who had robbed him. The only question they asked Harmon at that time was whether he was sure, and Harmon said yes.

*Robert Benson*

He is a porter at the Ideal Hotel at 1005 Madison. On October 21, 1968, between 12 and 3:00 o'clock in the afternoon he was involved in an incident at the hotel. He flagged down a police car at the corner of Madison and Morgan and told the officers that a man had just been robbed in the hotel. He described the robbers to the police as two colored men, one short, wearing a car coat, and one tall, with a light tan or green jacket on. He said they were running down Morgan toward Monroe. A few minutes later the police returned with the men, asked him if he could identify them, and he did so. He then went to get Harmon and told Harmon that the police had caught the robbers. Harmon identified defendant and Tucker.

After hearing the testimony of the three witnesses set out above, the trial court denied the motion to suppress the identification testimony. Defendant contends that since the testimony of Officer Danzl indicated that the only information given to him was that the robbers were two colored men and the direction in which they had run, he could not have had reasonable grounds to believe that defendant had committed the offense; that the arrest being without probable cause, the subsequent identifications must be suppressed, citing *People v. Bean*, 121 Ill.App.2d 332.

The State argues, in the alternative, that there was no arrest until after Benson and Harmon identified defendant, or that, if the arrest took place prior to those identifications, the police had probable cause to make the arrest. While there is testimony in the trial record supporting the State's argument that the initial questioning of defendant was a preliminary questioning without arrest, that evidence was not before the court when the motion to suppress was denied, and the trial court assumed that the arrest had taken place prior to the identifications. The trial court's ruling was nevertheless correct because the evidence supported its finding that there were reasonable grounds for the arrest. Therefore, even if we were to assume that the *Bean* case, cited by defendant, is a correct statement of the law on the question of the sup-

pression of identifications, we find that it would not apply to the facts in the case before us.

A peace officer may arrest a person without a warrant when "[h]e has reasonable grounds to believe that the person is committing or has committed an offense." (Ill. Rev. Stat. 1967, ch. 38, par. 107—2 (c).) The Supreme Court said in *People v. Jones*, 31 Ill.2d 42, 46: "* * * while a completely satisfactory and inflexible definition of what constitutes reasonable grounds is not possible to formulate, it is generally agreed that reasonable grounds or probable cause for arrest exists if the facts and the circumstances known to the officer would warrant a prudent and cautious man in believing that the person arrested was guilty of an offense."

■■ In the instant case, the arresting officers were told that two colored men had just committed a robbery, and that they had run down the street and turned the corner. The officers gave chase and saw two colored men standing in a doorway just around the corner where the robbers had turned. Only one other black man was in the vicinity. When the officers questioned the men, they attempted to explain their presence by saying that they were visiting a friend in the building, but they did not remember his name, nor did they identify his apartment. One of the men was perspiring and breathing heavily. The totality of these circumstances warranted the officers' belief that defendant and Tucker had just committed the robbery, and thus justified the arrest.

Defendant also contends that the trial court found probable cause for the arrest because of an erroneous belief that a clothing description of the robbers had been given to the police by Benson. The trial court indicated, in denying the motion, that the arresting officers had been given a clothing description, and the testimony of Benson indicated that this was the case, whereas the police officers' testimony was not corroborative. Apart from that evidence, however, the other circumstances, as we have indicated, were sufficient to warrant the arresting officers' belief that defendant had just committed the offense, and the court's denial of the motion to suppress was correct.

Defendant's last contention is that he was not proven guilty beyond a reasonable doubt due to the vagueness and testimonial inconsistencies of the State's identification witnesses, and because of the lack of independent corroboration. The testimony at the trial follows:

*Frank Harmon*, for the State:

He lives at the Ideal Hotel at 1005 W. Madison and is 83 years of age. He had been to the grocery store on October 21, 1968, and was returning to the hotel when he saw two colored men standing in front of the door laughing at him. He did not pay too much attention to them and

started upstairs. As soon as he passed the middle landing, he was grabbed from behind around the neck. His assailant jabbed his right arm into the witness' right pocket and ripped off the pocket. The other person went to his left pocket. He identified defendant in court as one of the assailants. One of the men hit him in the back of the head, stunning him. He fell forward and started to roll down the stairs. Earlier, he had yelled "Help," and a workman, Benson, looked in the door. Upon regaining his footing, the witness saw the men going out the door. He followed them to the corner of Madison and Morgan where he saw Benson talking to officers in a squad car, pointing to the two men running down toward Monroe. The robbers got $147 and some change from him. He went back to the hotel and then returned to the street where he saw defendant and the other robber in the squad car. He recognized both of them.

He testified that defendant had been wearing a brown-grey hat, but could not describe any other clothing, nor did he notice if either man had a beard. His glasses were knocked off during the robbery, but he can see without them.

*Robert Benson,* for the State:

He lives at the Ideal Hotel where he was a porter on October 21, 1968. Sometime before 2:00 o'clock that afternoon, he heard somebody holler, "Jackrollers," in the hallway. He opened a door, saw Harmon rolling down the stairs and two fellows on the first landing on their way out the door. He identified defendant in court as one of these two men. As he chased them out the door, they turned around, and he got a look at both their faces. The area was well lit. He chased them around the corner where he flagged down a passing squad car. He told the police what had happened, was instructed to wait on the corner, and the police soon returned with the robbers in the squad car.

He testified on cross-examination that the tall robber wore a light jacket and the other had a dark car coat. He did not remember if the robbers had beards or mustaches. As defendant ran down the street, he attempted to remove his jacket. When the witness stopped the police, he told them that one robber was tall, the other short, and he described their clothing. He pointed them out to the police while they were still running, before they turned the corner out of view.

*Joseph Danzl,* for the State:

He is a police officer and was working with his partner, Donald Macak, on October 21, 1968. He arrested defendant and Tucker about 1:45 that afternoon. Defendant was not wearing a hat when he was arrested. Benson had given him a description of the robbers as two colored men, and pointed a direction, but had not given him a clothing

description. He and his partner proceeded in that direction but did not see anyone running, nor did he see anyone on the street. He saw a woman sitting on a porch. He arrested defendant and Tucker standing in a hallway at 1008 W. Monroe. The witness and his partner searched them and found less than a dollar in change. The elapsed time between Benson's report and the arrest was 30 seconds to a minute.

*William Hobson,* in his own behalf:

He is 22-years-of-age. On October 21, 1968, at approximately 1:30 or 1:45 in the afternoon, he was arrested in the doorway of 1008 Monroe, on his way out of the building. He had been visiting two friends in the lobby for over an hour. He did not know their real names, but only their nicknames, and had not seen them since his arrest. When he was leaving the doorway, he was alone, and another man was coming in. This other man was Tucker, whom he knew by name, but who was not his friend. Defendant had one penny on his person when he was arrested, and the police found a dime in his cuff. He was wearing a light grey hat at the time of his arrest and was wearing a darkish green three-quarter-length coat and green trousers.

When the police first approached him, they asked him if he had robbed anyone. He said, "No," and the officer told him to come around the corner with him because if he did not rob anyone, he had nothing to worry about. The witness said, "Okay."

Defendant argues that the testimony of the identification witnesses was unsatisfactory because they had little opportunity to observe the assailants. Defendant relies on *People v. Cullotta,* 32 Ill.2d 502, 504, in support of his contention that to make a positive identification, an ample opportunity to observe the accused must be demonstrated. He argues, for example, that since neither witness could testify as to whether defendant had a beard or mustache at the time of the robbery, their lack of an opportunity to observe defendant had been demonstrated, citing *People v. Kincy,* 72 Ill.App.2d 419, 424—25. In that case, there was no evidence that the sole identification witness had seen the robber's face at the time of the crime. She apparently identified him solely through the color of his hat and jacket, and she was not positive as to that. There, the totality of the witness' testimony and other evidence was so unsatisfactory as to leave court with a reasonable doubt of defendant's guilt. Not so in the instant case.

■■■ The record testimony here does demonstrate that the witnesses had ample opportunity to observe the assailants. Harmon saw them as he walked into the hotel, when he was assaulted, and as they fled. Benson also saw their faces under good lighting conditions. The testimony of one witness, when positive and credible, is sufficient to sustain a convic-

tion. (*People v. Novotny*, 41 Ill.2d 401, 411.) The trial judge obviously believed the testimony of these witnesses and indicated that he did not believe defendant. That is the proper province of the trial court and not ours. We conclude that the evidence supported the court's finding of guilty beyond a reasonable doubt.

The judgment is therefore affirmed.

Judgment affirmed.

DRUCKER and LORENZ, JJ., concur.