(No. 44873.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. EDWARD CLAY, Appellant.

*Opinion filed November 20, 1973.*

LEO E. HOLT, of Chicago, for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and BERNARD CAREY, State's Attorney, of Chicago (JAMES B. ZAGEL, Assistant Attorney General, and KENNETH L. GILLIS and THOMAS A. MAUET, Assistant State's Attorneys, of counsel), for the People.

MR. JUSTICE RYAN delivered the opinion of the court:

Following a bench trial in the circuit court of Cook County, defendant, Edward Clay, was convicted of murder

and three armed-robbery charges and sentenced to the penitentiary for a term of from 40 to 60 years for each offense. Constitutional questions were raised, and the appeal was taken to this court pursuant to our Rule 603 then in effect (43 Ill.2d R. 603). *People v. Johnson, 55 Ill.2d 62,* arose from the same incident. The questions involved in the instant case do not require a complete restatement of the facts which are set forth in *Johnson.* It is sufficient to say that the defendant was convicted of the armed robberies and murder which occurred in Otto's Tavern on Bissell Street in Chicago, on April 18, 1968.

Defendant's primary contention, and the one upon which other alleged errors are premised, is that the police, when they arrested him without a warrant, lacked probable cause to believe he had committed an offense. We disagree.

Witnesses to the crime informed police that the gunmen were two male Negroes in their early 20s, approximately 5 feet 8 inches and 6 feet tall. They stated that one was dark and the other was light in color. In addition, the witnesses described to police their personal effects which were taken in the robbery, and the shotguns used by the two holdup men. This information was in the possession of the police when they learned that Charles Knox knew something about the crimes.

On the morning of April 21, 1968, Charles Knox was located by the police and questioned. According to the police officers, Knox informed them that on April 19 he had met two men on a Chicago street corner, one of whom was known to him as Moses, and the other was identified by Moses as his brother. Moses told him that they had committed a robbery on Bissell Street and had taken a large quantity of money. Moses showed him a large roll of bills and said that he had "to trigger the woman with a shotgun." Knox said that Moses and his brother were Negroes; that Moses was approximately 20 years old and was dark complected; that his brother was light complec-

ted; that he had seen a shotgun in the front bedroom of Moses' apartment, and that, while he did not know Moses' specific address, he could point out the building and describe the floor plan of Moses' apartment.

With Knox's assistance, the police proceeded to the building and apartment in which Moses resided, which was also on Bissell Street. The police entered the apartment and arrested Moses and his two brothers, Oscar and Edward (the defendant in this case). The physical characteristics of Moses and Edward conformed to the descriptions given the police by Knox.

At a hearing to suppress statements made by the defendant after his arrest, Knox refuted the testimony of the police officers as to what he had told them. Knox testified that he had never told the police who committed the crime on Bissell Street; that he had not informed the police of any recent conversations with Moses, for he had not spoken to the latter for three weeks prior to the questioning, and that the only information that he had given to the police was that he knew a man named Moses who lived on Bissell Street and who had a shotgun. The trial judge at the hearing on the motion to suppress heard the conflicting testimony as to what Knox had told the police prior to defendant's arrest. It is the function of the trial court to resolve conflicts in the testimony and to determine the credibility of the statements given by the witnesses. (*People v. Hurst,* 42 Ill.2d 217, 220.) From the court's denial of the motion to suppress it is apparent that the court resolved the conflict by determining that the testimony of the officers was more credible than that of Knox. We find no reason to disturb this determination.

Whether or not probable cause for an arrest exists in a particular case depends upon the totality of the facts and circumstances known to the officers when the arrest was made. (*People v. Higgins,* 50 Ill.2d 221, 227; *People v. Gwin,* 49 Ill.2d 255, 258.) In deciding the question of probable cause in a particular case the courts deal with

probabilities and are not disposed to be unduly technical. These probabilities are the factual and practical considerations of everyday life on which reasonable men, not legal technicians, act. *Draper v. United States, 358 U.S. 307, 3 L. Ed. 2d 327, 79 S. Ct. 329; People v. Fiorito, 19 Ill.2d 246.*

The defendant contends that the State failed to prove that Knox was a reliable informant and that, therefore, the information which he gave to the police officers would not justify the arrest of the defendant.

To establish probable cause for the defendant's arrest under the circumstances in this case it was not necessary that it be established that Knox was an informant who had previously given reliable information to the police. This is not the customary case where the arrest is made solely on the basis of information obtained from an informant. The officers knew that a murder and three armed robberies had been committed by two men armed with shotguns. They knew the descriptions of the men. What Knox told the officers was corroborated by the descriptions of the men as to age, height and complexion which they had received from witnesses. This independent corroboration of the information obtained from Knox was sufficient to establish probable cause to arrest the defendant. *People v. Wilson, 45 Ill.2d 581; People v. Durr, 28 Ill.2d 308.*

The trial court conducted a lengthy hearing on the motion to suppress and concluded that the officers did have probable cause to arrest the defendant. We will not disturb this finding unless manifestly erroneous, which we find it not to be. *People v. Brooks, 51 Ill.2d 156, 165; People v. Dailey, 51 Ill.2d 239, 242.*

After the police entered the Clay apartment, the three brothers were ordered into the living room. While in the living room, one of the officers observed a watch on a window box, and a wallet lying on a coffee table next to a sofa. Both the watch and the wallet were seized by police, and subsequently identified at trial as items taken from

tavern customers by the holdup men during the robbery. After his arrest, the defendant confessed to his involvement in the tavern crimes. He stated that during the holdup he stood guard outside the tavern with a shotgun. He informed police that the shotgun could be found at his father's home. Police then procured the shotgun. It was a .16-gauge over-and-under model, identified by witnesses to the robbery as similar to the one used in the holdup. In addition, after his arrest, the defendant was placed in a lineup and identified by the proprietor of the tavern as being one of the holdup men. The proprietor also made an in-court identification of the defendant.

The defendant now contends that the confession, shotgun, watch, wallet, lineup and in-court identifications should have been suppressed as fruits of an illegal arrest, citing *Wong Sun v. United States, 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407.* Having found that the defendant's arrest was legal, the defendant's contentions must fall, as all are bottomed on the alleged illegality of the arrest. No question is raised as to the voluntariness of defendant's confession, or any failure to give defendant the prescribed *Miranda* warnings (*Miranda v. Arizona, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602*).

The legal arrest also obviates consideration of the introduction of the shotgun secured from the defendant's father, for its discovery was the product of the voluntary confession. In addition, defendant's argument that the identifications should have been suppressed because they resulted from the illegal arrest must similarly fall.

The defendant lastly contends that the evidence failed to establish his guilt beyond a reasonable doubt. This contention is premised on his assertion that testimony of two eyewitnesses to the crime identifying him as one of the assailants was not credible, and that his identity, therefore, was never proved beyond a reasonable doubt.

It is unnecessary to detail the testimony of the witnesses who identified the defendant at trial. The attack

is primarily on their credibility, which, of course, is a question for the trial court's determination in the absence of a jury. Its determination will not be set aside on review unless the proof is so unsatisfactory as to create a reasonable doubt as to the defendant's guilt. (*People v. Pagan, 52 Ill.2d 525, 534.*) Regardless of the strength or weakness of the identification testimony, the other evidence of the defendant's guilt is so overwhelming as to prove the defendant guilty beyond a reasonable doubt. The police recovered the watch and the wallet belonging to one of the victims from the apartment where the defendant was arrested; several identification cards of two of the victims of the robbery were found in a trash barrel in an alley adjacent to the apartment. The defendant voluntarily confessed to his participation in the robbery, and his confession led to the discovery of a shotgun similar to one used in the holdup on the roof of the apartment building where he was arrested. It is our conclusion that the trial court correctly found that the defendant's guilt of the offenses charged was proved beyond a reasonable doubt.

The judgments of the circuit court of Cook County are affirmed.

*Judgments affirmed.*