(No. 47231.-

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. CHARLES ROBINSON *et al.*, Appellees.

*Opinion filed January 26, 1976.*

274

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (James B. Zagel and Jayne A. Carr, Assistant Attorneys General, of Chicago, and Laurence J. Bolon, Edward J. Ozog, Douglas Cannon, and Robert J. Raab, Assistant State's Attorneys, of counsel), for the People.

James J. Doherty, Public Defender, of Chicago (James N. Gramenos, Assistant Public Defender, of counsel), for appellees.

MR. CHIEF JUSTICE WARD delivered the opinion of the court:

The defendants, Charles Robinson and Jesse Redwood, who had been indicted for burglary in the circuit court of Cook County on April 6, 1972, moved to quash the arrest which led to their indictment and to suppress evidence seized on the ground that the arresting officer lacked probable cause to arrest. The trial court allowed the motion, and its order was affirmed by the appellate court (23 Ill. App. 3d 955). We granted the People's petition for leave to appeal.

At the hearing on the motion to suppress Edward Hobbs, a Chicago police officer, testified that on October 28, 1971, when he was off duty and in plain clothes, he observed the defendants walk from a gangway on Adams Street in Chicago. He testified the locality was a high-crime area. The defendant Robinson was walking in front of Redwood. Officer Hobbs testified that the two men stopped at the mouth of the gangway and Robinson

looked up and down the street. The defendants then proceeded to cross the street at a "very fast, brisk gait" and headed in the direction of an alley on the other side of the street. In his right hand Robinson carried a 12-gauge long-barrelled pump shotgun upside down with the trigger portion covered by a tan trench coat. About 16 to 17 inches of the barrel and butt of the weapon were protruding from the coat. In his left hand he carried a beige portable television set. Redwood followed him carrying a large white laundry bag filled with objects the officer could not identify protruding from the top of it. Hobbs approached the defendants from their rear holding his star in his left hand and his revolver in his right. He identified himself as a police officer and asked the defendants about the property they were carrying. Robinson replied that they were helping his sister to move and that they would take the officer to his sister's residence to prove it. At that the officer took the shotgun from Robinson and proceeded to follow them down the alley. On direct examination the officer testified he did not know exactly where they were going but assumed they were proceeding to Robinson's sister's home. On cross-examination the officer admitted he was walking down the alley to obtain assistance.

After walking about one block down the alley the three men reached a building in a courtyard with an adjacent gangway and garage. The officer saw three men working in a nearby backyard and he ordered the defendants to put the property they were carrying on the ground and to place their hands against the garage door. He then called to the three and asked them to phone the police to assist him. The men refused, and Hobbs, continuing to watch the defendants, then began side-stepping down the alley to seek the assistance of an elderly man who was in the alley some distance away. As he did, the defendants turned away from the garage door and ran down the adjacent gangway.

The defendants were apprehended a short time later by other officers who had received a call about a suspicious appearing man carrying a shotgun and TV set. The property in the defendants' possession was later identified as taken in a burglary. The burglary had occurred only 15 minutes before Officer Hobbs first observed the defendants.

At the hearing on the motion to suppress, the trial court said it considered that an arrest took place when Officer Hobbs confronted the defendants on the street with his revolver drawn. The court observed that the officer had performed "wonderful police work" and that he "should [have been] fired if he didn't do what he did." But it concluded that probable cause to arrest was lacking.

We consider the arrests were based on probable cause. See *Sibron v. New York,* 392 U.S. 40, 67-68, 20 L. Ed. 2d 917, 937, 88 S. Ct. 1889, 1905.

The constitutions (Ill. Const. (1970), art. I, sec. 6; U.S. Const., amend. IV) do not protect against all searches and seizures, but only those which are unreasonable. (*People v. Watkins,* 19 Ill.2d 11, 18.) A search without a warrant is reasonable if it is incident to a lawful arrest. (*People v. Wright,* 41 Ill.2d 170, 173.) There is probable cause when the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a man of reasonable caution in believing that an offense has been committed and that the person arrested has committed the offense. (*People v. McCrimmon,* 37 Ill.2d 40, 43.) This court observed in *People v. Jones,* 31 Ill.2d 42, 47, that "*** reasonable cause means something less than evidence which would result in a conviction, and it is also established that reasonable cause may be founded upon evidence that would not be admissible at trial."

In considering whether probable cause existed, we stated in *People v. Clay,* 55 Ill.2d 501, 504-05, "Whether or not probable cause for an arrest exists in a particular case depends upon the totality of the facts and circum-

stances known to the officers when the arrest was made. [Citations.] In deciding the question of probable cause in a particular case the courts deal with probabilities and are not disposed to be unduly technical. These probabilities are the factual and practical considerations of everyday life on which reasonable men, not legal technicians, act. *Draper v. United States,* 358 U.S. 307, 3 L. Ed. 2d 327, 79 S. Ct. 329; *People v. Fiorito,* 19 Ill.2d 246." Also it is proper to recognize in judging whether there was probable cause that "[p]olice officers often must act upon a quick appraisal of the data before them, and the reasonableness of their conduct must be judged on the basis of their responsibility to prevent crime and to catch criminals." *People v. Watkins,* 19 Ill.2d 11, 19.

When Officer Hobbs approached the defendants there were sufficient circumstances within his knowledge to support the arrests. The location was a high-crime area of Chicago. He saw the defendants walking through the gangway carrying a television set, a laundry bag filled with materials, and a shotgun partially concealed by a trench coat. The men stopped at the mouth of the gangway and peered up and down the street before proceeding to cross the street and when they did they did so at a "very fast, brisk gait" and in the direction of an alley on the other side. Considering all the circumstances, including the defendants' "deliberately furtive actions"—the looking up and down as if making sure no police or police cars were in sight and then the hurried crossing—there was probable cause. See *Sibron v. New York,* 392 U.S. 40, 66-67, 20 L. Ed. 2d 917, 937, 88 S. Ct. 1889, 1904.

For the reasons given, the judgments of the appellate and circuit courts are reversed and the cause is remanded to the circuit court for further proceedings.

*Reversed and remanded.*

MR. JUSTICE GOLDENHERSH, dissenting:

I dissent. The majority concludes that "When Officer

Hobbs approached the defendants there were sufficient circumstances within his knowledge to support the arrests. The location was a high-crime area of Chicago. He saw the defendants walking through the gangway carrying a television set, a laundry bag filled with materials, and a shotgun partially concealed by a trench coat. The men stopped at the mouth of the gangway and peered up and down the street before proceeding to cross the street and when they did they did so at a 'very fast, brisk gait' and in the direction of an alley on the other side. Considering all the circumstances, including the defendants' 'deliberately furtive actions'—the looking up and down as if making sure no police or police cars were in sight and then the hurried crossing—there was probable cause. See *Sibron v. New York,* 392 U.S. 40, 66-67, 20 L. Ed. 2d 917, 937, 88 S. Ct. 1889, 1904." (62 Ill.2d at 277.) In *Sibron,* the search of Peters was approved while that of Sibron was disapproved, and it may therefore be assumed that the majority finds some similarity in the circumstances surrounding the arrest of Peters and those reflected by this record at the time of defendants' arrest.

Peters was first observed on the sixth floor of an apartment building "tiptoeing" out of an alcove toward a stairway. The arresting officer, an off-duty New York policeman who had resided in the building for 12 years, did not recognize either him or his companion as tenants. When the officer slammed a door, Peters and his companion ran. When the police officer seized him, Peters said he was in the building to visit a "girl friend" whose name he refused to reveal because she was married.

In contrast, defendants were arrested while walking in a public alley in broad daylight carrying an unconcealed shotgun, a bag, and a television set. The People have taken several positions as to when the arrest occurred, but it is simple "hornbook" law that when Hobbs approached the defendants with gun in one hand and badge in the other, he was making not an "investigatory stop" but an arrest,

and its validity must be judged by the probable cause extant at that time.

At that time Officer Hobbs did not know there had been a burglary. What the majority characterizes as "deliberately furtive actions," looking up and down the street and then crossing at a brisk pace, could as well have been the exercise of the degree of due care and caution required to avoid being struck by an automobile while crossing Monroe Street in Chicago. Nor does the description of the neighborhood as a "high-crime" area warrant the conclusion reached by the majority. It is true that in a better neighborhood the shotgun might have been enclosed in a leather case and the other items carried in a container more elegant than a laundry bag. I submit, however, that the absence of these niceties did not serve to elevate Officer Hobbs' suspicions to the level of probable cause.

The evidence was ordered suppressed on the basis of findings made by an able circuit judge with many years of experience in the trial of criminal cases. The appellate court correctly affirmed his order, and its judgment should be affirmed.