THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MICHAEL CLARK, Defendant-Appellant.

Second District (1st Division)    No. 74-310

Opinion filed November 1, 1976.

Ralph Ruebner and J. Daniel Stewart, both of State Appellate Defender's Office, of Elgin, for appellant.

William J. Scott, Attorney General, of Chicago, and Jack Hoogasian, State's Attorney, of Waukegan (Jayne A. Carr and Charles H. Levad, Assistant Attorneys General, of counsel), for the People.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:

Six members of the De Mau Mau gang were indicted for the murder and armed robbery of William Richter and the attempt murder of James Davis. All were incarcerated in the Lake County jail and while there two of the members of the gang, Edward Moran and Nathaniel Burse, were murdered. The other four members of the De Mau Maus were tried

separately on the above indictment. We have previously considered the appeals of two of the four and reference is made to *People v. Peatry* (1976), 38 Ill. App. 3d 332, 347 N.E.2d 169; and *People v. Wilson* (1976), 37 Ill. App. 3d 560, 346 N.E.2d 161. Wilson was sentenced to three concurrent terms of 20-60 years; Peatry was sentenced to three concurrent terms of 40-120 years and the defendant herein, after his jury trial, was sentenced to 40-120 years for the murder and armed robbery of William Richter and the attempt murder of James Davis.

As set forth in *Peatry*, William "Butch" Jackson also testified herein that Clark suggested to the members of the De Mau Mau gang that they "make some money" as Clark knew where trucks would be parked along a highway from which they could get money. He further testified that he drove Robert Wilson, Edward Moran and Clark to the scene of the murder and armed robbery of Richter and the attempt murder of Davis. Three other men followed in Don Taylor's wife's car. Jackson further testified that Clark had the .38 caliber which was used to murder Richter and related the details of the offense. Defendant did not testify.

In this appeal defendant Clark has raised four issues. Three of the four issues have been specifically decided in *People v. Peatry* or *People v. Wilson*. The first of these contentions is that the trial court erroneously instructed the jury that it could find the defendant guilty of attempt murder without the necessary element of a specific intent to kill. This contention involved the giving of certain instructions, all of which are set forth in *People v. Wilson* and are the same instructions as given in this case. Here, as in *Wilson*, the murder instruction, which included the felony murder language, was given in regard to the murder of Richter and mentioned the victim's name four times. In both the definitional Instruction No. 9 and the issue Instruction No. 10 on attempt murder, "intent to commit murder" was explicitly stated to be an element of the offense. Here, as in *Wilson*, under these circumstances we do not believe the jury was misled. *Cf. People v. Gersbacher* (1970), 44 Ill. 2d 321, 255 N.E.2d 429.

The second contention of the defendant is that the defendant was not proven guilty beyond a reasonable doubt of the offense of armed robbery from the decedent where there was no evidence adduced of taking of anything of value. This issue was raised in *People v. Wilson*. We there held that circumstantial evidence was sufficient to support the jury's verdict. The same situation prevails herein and we specifically find that the circumstantial evidence in this case, as in *Wilson*, was sufficient to support the jury's verdict of armed robbery, and we therefore affirm that conviction.

■■ The next issue raised is that the trial court erred in imposing additional concurrent sentences on the defendant after the notice of

appeal was filed. This issue and similar facts concerning this contention were likewise raised in *People v. Wilson* and *People v. Peatry*. In the case before us the judgment and sentence order was entered by the court on February 7, 1974, finding that the defendant had been convicted of murder, attempt murder and armed robbery and a sentence was imposed of 40-120 years. On February 25, 1974, an amended mittimus was filed, setting forth concurrent sentences of 40-120 years for the three offenses for which the defendant had been convicted. Here, as in *Wilson*, we find no merit in this contention of the defendant and find this to be a correction of the record, jurisdiction of which is retained by the trial court after notice of appeal is filed. The notice of appeal herein having been filed on February 7, 1974, the amended mittimus filed on February 25, 1974, was a clarification of the court's pronouncement on February 7, 1974, imposing three concurrent 40-120 year sentences which had been mistakenly entered as one 40-120 year sentence.

We turn now to the one remaining contention of the defendant not disposed of in either the *Wilson* or *Peatry* opinions. Defendant contends that he was unlawfully arrested on the night of October 12, 1972; that subsequent to his arrest his finger and palm prints were taken and that these prints were improperly admitted into evidence at the trial. A fingerprint expert, Officer Granahan, testified that Clark's fingerprints and palm print matched those recovered from the "grab bar" of the Davis truck. Prior to trial motions to suppress on behalf of the various defendants were made and, as defendant points out, the question at the suppression hearing on behalf of the defendant Clark was whether probable cause existed for his arrest.

A brief resume of the various murders and the events leading to the arrest of the defendant follows.

On August 4, 1972, four members of a family were murdered in Barrington Hills, Illinois, and .25- and .30-caliber pellets and .30-caliber casings were found. Lt. Jerome Harmon of the Barrington Hills police became the supervisor in charge of the investigation of these killings and on August 6, 1972, he discovered that the .25-caliber pellets recovered from the murder on June 20, 1972, of a Miss Fiene at 5710 S. Paulina in Chicago, were fired from the same weapon as used in the Barrington Hills murders. On August 8, 1972, Lt. Harmon determined that the .30-caliber pellets recovered in the Barrington Hills murders were fired from the same weapons used to kill Michael Gerschenson on May 3, 1972, in Franklin County, Illinois. Both .30- and .38-caliber pellets were recovered at the scene and from the body of Gerschenson. Gerschenson's car was missing and on August 29, 1972, the Gerschenson car was burned at 4525 S. Federal Street in Chicago. A laundry ticket found in the car belonged to a member of the De Mau Mau gang. On September 4, 1972, three

members of another family, in Monee, Illinois, were found murdered in their home and .32- and .38-caliber pellets were recovered. Subsequently, Lt. Harmon was advised that the pellets recovered from the murders in Monee matched the .38-caliber pellets from the murder involved in the case before us, having been fired from the same weapon. On the date of the arrest of the defendant, Michael Clark, therefore, Lt. Harmon had determined that one or more of the same weapons had been used or were related to the ten murders in various parts of Illinois.

Informant No. 72-51 had infiltrated the De Mau Mau gang on October 5, 1972, and related to Lt. Harmon that members of the De Mau Mau gang drove a 1972 bronze Javelin automobile. The informant further advised Lt. Harmon that a meeting of some members of the gang would take place on October 12 to "plan a rip-off for the 13th," "a bad day for whites." The informant warned Lt. Harmon that the gang members would be armed and have narcotics. Lt. Harmon was further advised that the Javelin would be parked at 3651 S. Federal in Chicago. On October 12, 1972, about 7 in the evening, the building at 3651 S. Federal was staked out by Lt. Harmon in conjunction with Officer Buckendahl and other officers of the Chicago Police Department. Officer Arthur Jackson was taking part in the surveillance and was in a car with another officer and Informant 72-51. They arrived at the area about 8:30-9 and at 11 o'clock a bronze Javelin with license CL 7214, the license previously identified by the informant, parked at 3651 S. Federal. Four Negroes emerged from the car and entered the building. Fifteen to twenty minutes later the four men reappeared and entered the Javelin. Informant 72-51 identified them and Officer Jackson followed the Javelin onto the Dan Ryan Expressway. In all there were eight sheriff's vehicles in the vicinity, all of which had means of communication by two-way radio. Officer Buckendahl, alerted by radio, drove his vehicle until he located the Javelin and followed it onto the Dan Ryan Expressway. Officer Buckendahl turned on his emergency flashing headlights and his siren. His fellow officer displayed his police star out the window to the driver of the Javelin. A police car to the rear driven by Officer Gargano also had its siren and flashing headlights on. The Javelin did not stop but increased its speed as did Officer Buckendahl, who then forced the vehicle onto the shoulder of the road and the four occupants of the vehicle were arrested by either Officer Buckendahl or other officers who had arrived at the scene. The four men arrested were: the driver of the vehicle, Edward Moran; the passengers, Donald Taylor, Reuben Taylor and Michael Clark. No weapons were discovered but marijuana was observed in the car. On October 13 the defendant Clark was fingerprinted. As indicated above, the fingerprint expert at the trial identified the fingerprints and palm prints of Clark as matching those taken from the grab bar of the Davis semi-trailer truck.

■■ The substance of the defendant's contention in this regard is that the arresting officers acted unlawfully in effectuating the arrest without a warrant and that the fingerprints were therefore taken in violation of the defendant's constitutional rights under the fourth and fourteenth amendments of the Federal Constitution. Defendant further states that the arresting officers had no basis upon which to conclude that Informant 72-51 was credible or reliable. It is to be noted that the informant was present at the time of the identification of the four men in the Javelin, including Clark. Defendant further contends that at the time of the arrest Clark had not been identified as one of the members of the De Mau Maus by Informant 72-51. Defendant urges that this constitutes guilt by association. It is true, as pointed out by defendant, that "reviewing courts will more readily accept the judicial determination of a magistrate with reference to probable cause and will uphold his issuance of a warrant on evidence of a less persuasive character than would have justified an officer acting on his own determination and without a warrant." (*Aguilar v. Texas* (1964), 378 U.S. 108, 111, 12 L. Ed. 2d 723, 726, 84 S. Ct. 1509.) The question thus presented to us is whether the officer, Lt. Jerome Harmon, had probable cause for arresting the defendant with the other three men on the night of October 12.

In *People v. Clay* (1973), 55 Ill. 2d 501, 304 N.E.2d 280, the Supreme Court considered the question of whether the police, in arresting the defendant therein without a warrant, lacked probable cause to believe that he had committed an offense. Police therein questioned one Charles Knox who advised them that he had met two men, one known as "Moses" and the other was his brother, and that they had committed a robbery. The police, with Knox' assistance, proceeded to the apartment where Moses resided, entered the apartment and arrested Moses and his brother. The physical characteristics of Moses and his brother conformed to the description given the police by Knox. Knox subsequently repudiated his testimony. The court stated:

> "Whether or not probable cause for an arrest exists in a particular case depends upon the totality of the facts and circumstances known to the officers when the arrest was made. (*People v. Higgins*, 50 Ill. 2d 221, 227; *People v. Gwin*, 49 Ill. 2d 255, 258.)" (55 Ill. 2d 501, 504, 304 N.E.2d 280, 282.)

In deciding the question of probable cause in a particular case, the courts deal with probabilities and are not disposed to be unduly technical. These probabilities are the factual and practical considerations of everyday life on which reasonable men, not legal technicians, act. The court further observed in *Clay* that:

> "This is not the customary case where the arrest is made solely on the basis of information obtained from an informant. The officers

knew that a murder and three armed robberies had been committed by two men armed with shotguns. They knew the descriptions of the men. What Knox told the officers was corroborated by the descriptions of the men as to age, height and complexion which they had received from witnesses. This independent corroboration of the information obtained from Knox was sufficient to establish probable cause to arrest the defendant. [Citations.]" (55 Ill. 2d 501, 505, 304 N.E.2d 280, 282.)

The court further observed:

"The trial court conducted a lengthy hearing on the motion to suppress and concluded that the officers did have probable cause to arrest the defendant. We will not disturb this finding unless manifestly erroneous, which we find it not to be." 55 Ill. 2d 501, 505, 304 N.E.2d 280, 282.

In the case before us, ten murders had been committed at various times. It had been determined that the same gun or guns had been used in these murders. It was further determined that the murders had been committed by members of the De Mau Mau gang. The car of one of the murdered victims had been burned at 4525 S. Federal in Chicago. A laundry ticket was discovered in the burned vehicle which had been issued to a member of the gang named Jackson who resided at 3651 S. Federal. Investigating officers further were able to infiltrate the gang through the means of an informant who advised them that the group used a 1972 bronze Javelin automobile. Lastly, the informant advised the investigating officers that on October 12, 1972, a meeting of certain members of the gang would be held at 3651 S. Federal. The informant then went with the police to the stakeout at that address, the bronze Javelin automobile appeared with four Negro passengers, in accordance with the advice given to the police by the informant. Likewise, as advised by Informant 72-51, when the Javelin in which the four men were riding was stopped, marijuana was observed in the car. As pointed out in the cross-examination of Officer Gargano by defense counsel, Clark was arrested for possession of marijuana, *viz*:

"Q. And with regard to the booking procedure on Michael Clark, you started, at least initially began the booking procedure for Michael Clark, right?

A. I believe I did.

Q. As a matter of fact, you were the one who made the initial charge out against Michael Clark, isn't that true?

A. Yes.

Q. That charge was possession of marijuana, right?

A. Yes."

It is true that the four men were not finally charged at this time with

possession of marijuana. It was developed upon questioning the four men at the police station that they were involved in the murder of William Richter and the attempt murder of James Davis, and as a result of this they were booked on those charges. We believe that here, as in *Clay*, there was probable cause to arrest all four defendants. We do not believe the reliability of the informant is in question in this case as the informant was present immediately prior to the arrest and identified the men arrested as being members of the De Mau Mau gang. It is axiomatic that because probable cause existed at the time of the arrest a warrant was not necessary.

As the Supreme Court stated in *People v. Macias* (1968), 39 Ill. 2d 208, 213, 234 N.E.2d 783, 786-87:

"We have held that the test of probable cause is whether a reasonable and prudent man in possession of the knowledge which has come to the arresting officer would believe the person to be arrested is guilty of the crime; that it is something less than evidence that would result in conviction and may be founded on hearsay evidence; that it is based upon the factual and practical considerations of everyday life upon which reasonable and prudent men, not legal technicians, act. *People v. McCrimmon*, 37 Ill. 2d 40; *People v. Jones*, 31 Ill. 2d 42."

Or, as stated in *People v. McGurn* (1930), 341 Ill. 632, 635-36, 173 N.E. 754, 756:

"The guaranty of the constitution is not against all search and seizure but against unreasonable search and seizure and does not extend to an immunity from search and seizure on lawful arrest. Where a crime has, in fact, been committed and an arrest is made by an officer who has reasonable ground for believing the person arrested is implicated in the crime, such officer has a right to search the person arrested without a search warrant, and in such case the right of search and seizure is incidental to the right of arrest."

In view of the facts of this case, we find that the police had probable cause to arrest the defendant and we further find that the admission of his fingerprints into evidence was not the result of an illegal arrest. The judgment of the trial court is affirmed.

Affirmed.

SEIDENFELD and RECHENMACHER, JJ., concur.