(No. 48590.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant,
v. RICHARD EUGENE BLITZ, Appellee.

*Opinion filed Oct. 5, 1977.—Rehearing denied Nov. 23, 1977.*

CLARK, MORAN and GOLDENHERSH, JJ., dissenting.

William J. Scott, Attorney General, of Springfield, and Herbert J. Lantz, State's Attorney, of Chester (James B. Zagel, Assistant Attorney General, and Bruce D. Irish and Raymond F. Buckley, Jr., of the Illinois State's Attorneys Association Statewide Appellate Assistance Service, of Mt. Vernon, of counsel), for the People.

Michael J. Rosborough, Deputy Defender, and John H. Reid, Assistant Defender, of the Office of the State Appellate Defender, of Mt. Vernon, for appellee.

MR. CHIEF JUSTICE WARD delivered the opinion of the court:

On the evening of February 23, 1975, the defendant,

Richard Eugene Blitz, was stopped by sheriff's officers of Randolph County while driving his car in Steeleville. A search of the trunk revealed cannabis, and the defendant was charged with its possession (Ill. Rev. Stat. 1973, ch. 56½, par. 704(d)). He moved to suppress the cannabis, and the trial court allowed the motion, holding that the searching officer lacked probable cause to open and search the trunk of the car. The State appealed and the appellate court, with one judge dissenting, affirmed the suppression of the evidence (38 Ill. App. 3d 419). We allowed the State's petition for leave to appeal.

Kenneth Beam, a deputy sheriff of Randolph County, testified at the hearing on the motion to suppress that some officer of his office had received a tip from a "reliable informer" that drugs were being sold in a house in Percy occupied by George Kraft. Acting on this tip the sheriff's office maintained surveillance on the house for about a week prior to February 23, 1975. He said that, on the evening of February 23, he had the Kraft house under surveillance from a distance of a block and a half and that in a 15- to 20-minute period he observed between four to six cars separately pull up to the house. He testified that in each instance a person left the car, entered the house and returned to the car 5 to 10 minutes later. The auto would then be driven away. At about 7:30 p.m. he observed a car driven by the defendant park outside the Kraft house. Two persons left the car, entered the house and returned carrying a brown bag which was placed in the trunk. He said the bag was of a type large enough to carry 16 to 25 pounds of food. The defendant later testified that he did carry a brown paper grocery bag from the house but stated he placed it in the rear seat of the auto, not in the trunk.

Beam stated that he followed the defendant's car when it left the house and that it headed in the direction of Steeleville. He said that while following the car he tried to read the number on the rear license plate but he could

not do so because the license plate light was out and in addition because a trailer hitch on the car obstructed his view of the plate. He testified that he radioed for backup assistance because there were a number of persons in the car and that as he would radio he would notice the occupants looking back at him. He concluded from this, he said, that the occupants of the defendant's car were monitoring his radio calls. He said he decided to stop the car in Steeleville because it was a well-lighted area and because he wanted to give his backup officers ample time to come to assist him.

He testified that when he stopped the car the defendant "jumped out of the car and ran back [toward him], acting in a nervous manner." He said he told the defendant that he had stopped him because of the license plate violation and that he asked for and was given what apparently was a valid driver's license. He said that as he walked toward the defendant's car he heard what he thought may have been police transmissions coming from an eight-band radio in the defendant's car. The witness stated that when he saw Michael Blitz, the defendant's brother, turn a knob on the radio, he opened the car door and took the radio from Michael. He then ordered the occupants out of the car and told the four of them and the defendant to place their hands on the trunk of the car. He said he kept a shotgun trained on the occupants for his own protection until the other officers arrived. When they did, the occupants were searched. A hunting knife was found on Michael Blitz, and he was then placed under arrest for possession of the knife, and Richard Blitz was arrested for the license plate light violation. He stated that the defendant gave him permission to search the interior of the car and then the trunk. (The appellate court held that there was not a valid consent to search the trunk. Whether there was a consent is not an issue here, because the People rely on other grounds to justify the search.) There was

cannabis in the trunk.

On cross-examination Officer Beam stated he had stopped the car because of the license plate light violation and because he "wanted to look into that car *** to see if there was cannabis in there." He said that he believed the car contained drugs and that there was cannabis in the bag because of all of the activities he saw while he had the Kraft house under surveillance, because the two occupants of the defendant's car placed the bag in the trunk and because his office had "a report from a reliable source, there was drugs being sold out of the house." He said he did not remember who in the sheriff's office had told him of the tip or the circumstances of its being given.

When asked: "At the time you stopped the vehicle the only violation that you were aware of was of the traffic violation?" the officer responded: "No, I believed they had cannabis in it." Later he was asked: "And you wanted to look into that car when you stopped that car to see if there was cannabis in there?" He answered yes. He also testified that he had followed the defendant's car from Percy and had stopped it so that he could examine the trunk.

The question presented to us is whether there was probable cause to justify the search of the trunk of the defendant's car. What this court observed in *People v. Watkins* (1960), 19 Ill. 2d 11, 18-19, is relevant:

> "The constitution prohibits only unreasonable searches; it permits those that are reasonable. The critical issue in each case must be whether the situation that confronted the officer justified the search. That question can not be determined by an indiscriminate application of legal concepts that were evolved to meet quite different problems. ***
>
> ***
>
> *** Police officers often must act upon a

quick appraisal of the data before them, and the reasonableness of their conduct must be judged on the basis of their responsibility to prevent crime and to catch criminals."

See also *People v. Robinson* (1976), 62 Ill. 2d 273; *People v. Palmer* (1976), 62 Ill. 2d 261.

In determining whether there was probable cause we must look at all of the circumstances presented to the investigating officer. Probable cause exists when "the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a man of reasonable caution in believing that an offense has been committed and that the person arrested has committed the offense. [Citation.]" (*People v. Robinson* (1976), 62 Ill. 2d 273, 276.) Facts sufficient to establish probable cause need not be sufficient to establish guilt beyond a reasonable doubt (*Draper v. United States* (1969), 358 U.S. 307, 311-12, 3 L. Ed. 2d 327, 331, 79 S. Ct. 329), and probable cause may be founded upon evidence which would not be admissible at trial (*People v. Jones* (1964), 31 Ill. 2d 42, 47). The court in *United States v. Davis* (D.C. Cir. 1972), 458 F.2d 819, 821, commented broadly on probable cause:

"Probable cause does not emanate from an antiseptic courtroom, a sterile library or a sacrosanct adytum, nor is it a pristine 'philosophical concept existing in a vacuum,' Bell v. United States, 102 U.S. App. D.C. 383, 386, 254 F.2d 82, 85 (1958), but rather it requires a pragmatic analysis of 'everyday life on which reasonable and prudent men, not legal technicians, act.' Brinegar v. United States, 338 U.S. 160, 175, 69 S. Ct. 1302, 1310, 93 L. Ed. 1879 (1949). It is to be viewed from the vantage point of a prudent, reasonable, cautious police officer on the scene at the time of the arrest guided by his experience

and training. Jackson v. United States, 112 U.S. App. D.C. 260, 302 F.2d 194 (1962). It is 'a plastic concept whose existence depends on the facts and circumstances of the particular case.' Bailey v. United States, 128 U.S. App. D.C. 354, 357, 389 F.2d 305, 308 (1967). *See* McCray v. Illinois, 386 U.S. 300, 304, 87 S. Ct. 1056, 18 L. Ed. 2d 62 (1967); Beck v. Ohio, *supra*, 379 U.S. at 91, 85 S. Ct. 223; Brinegar v. United States, *supra*, 338 U.S. at 175-176, 69 S. Ct. 1302. Because of the kaleidoscopic myriad that goes into the probable cause mix 'seldom does a decision in one case handily dispose of the next.' Hinton v. United States, 137 U.S. App. D.C. 388, 391, 424 F.2d 876, 879 (1969). It is however the totality of these facts and circumstances which is the relevant consideration. Davis v. United States, 133 U.S. App. D.C. 172, 173, 409 F.2d 458, 459 (1969); Dixon v. United States, 111 U.S. App. D.C. 305, 306, 296 F.2d 427, 428 (1961). Viewed singly these factors may not be dispositive, yet when viewed in unison the puzzle may fit."

See *Commonwealth v. Norwood* (1974), 456 Pa. 330, 319 A.2d 908.

The deputy sheriff, Beam, testified that deputies of his office had kept the Kraft house under surveillance for a week prior to February 23, 1975, because of the tip that drugs were being sold there. (There was no attempt by the defendant to controvert this through the subpoenaing of patrol records of the sheriff's office or through the testimony of other deputies.) Beam personally observed four to six cars separately arrive at the house in a 15- to 20-minute period. In each instance people left their cars, entered the house and returned shortly to their cars. He testified he saw the defendant park his car outside the

house and that two persons left the auto and entered the house. They returned to the car within 10 minutes and the witness said he saw these two open the trunk and place a brown paper bag in it. Considering the totality of the circumstances we judge that Beam had probable cause to search the defendant's trunk. This probable cause was not destroyed or diminished by Beam's later observing the absence of a license plate light on the car. In *People v. Brown* (1967), 38 Ill. 2d 353, 358, this court, in holding reasonable the search of an automobile trunk, observed: "It is the duty of police officers when confronted with circumstances giving an appearance of criminal activity to investigate in an effort to determine whether such criminal activity, in fact, exists." Under the circumstances Beam would have been subject to criticism had he not attempted to ascertain whether the defendant's car did in fact contain drugs.

For the reasons given, the judgments of the circuit and appellate courts are reversed, and the cause is remanded to the circuit court of Randolph County for further proceedings.

*Reversed and remanded.*

MR. JUSTICE CLARK, dissenting:

I dissent. The majority's recitation of a laundry list of generalities about the need to accord law enforcement officers a certain amount of discretion (a need which I recognize) does not address the issue raised by this case: whether *this* law enforcement officer had adequate grounds for *this* search. Resolution of that issue requires analysis of the precise facts which the law enforcement officer possessed at each significant stage of his intrusion upon defendant's fourth amendment rights, as well as comparison of those precise facts to the types of facts and circumstances which this court and the United States Supreme Court have found adequate to justify such

intrusions. Had the majority seen fit to embark upon this admittedly painstaking but nonetheless necessary course of analysis, it could not have reached the result it did. Moreover, in its haste to uphold the lawfulness of this search, the majority has cast a shadow upon a long line of this court's decisions regarding the trial court's role in assessing the credibility of witnesses and making factual findings in connection with motions to suppress evidence.

Kenneth Beam, a deputy sheriff of Randolph County, testified at the suppression hearing that the Randolph County sheriff's office had received a tip that illegal drugs were being sold at the residence of George Kraft in Percy, Illinois, a small town near the eastern edge of Randolph County. (Beam gave no other significant details regarding the tip.) The sheriff's office placed the house under surveillance.

About a week later, on February 22, 1975, one of the other deputies on the surveillance detail told Beam that a shipment of drugs was expected. (Beam again gave no other significant details regarding this additional tip.) The next evening, shortly after 7 p.m., Beam was stationed in an unmarked car across the street from the house when he observed a succession of four or five persons drive up to the house, enter, and depart after 5 or 10 minutes. About 7:30 p.m. he observed the defendant and the defendant's brother, Michael, similarly arrive, enter the house, and return about 5 minutes later carrying a brown paper bag which, Beam testified, they placed in the trunk of the car.

When the car departed, Beam followed it as it headed westward through Randolph County toward Steeleville. He testified that, while following the car, he was unable to read its license number because the light which normally illuminates the rear license plate was not working and because a trailer hitch obstructed his view. Beam radioed for assistance, and testified that, as he did so, he observed the occupants of the car turn around and look at him.

As the Blitz car reached a relatively well-lighted area at Steeleville, Beam turned on the flashing red light on his dashboard, leading defendant to promptly pull over to the side of the road. Beam admitted that his reason for stopping defendant's car was, at least in part, to search its trunk. The trial court apparently found that the traffic stop was merely a pretext for the vehicle search; the majority does not contest this finding.

After stopping, defendant got out of his car and started walking back toward Beam's car in what Beam described as a "nervous manner." The defendant gave Beam an apparently valid driver's license. Beam testified that, at about this time, he heard what he thought to be police radio transmissions coming from defendant's car, and that, when he saw Michael turn a knob on a radio in the car, he opened the door, took the radio from Michael, and told everybody to get out of the car and put their hands on the trunk. Beam then returned to his own car and ran an apparently fruitless radio check on defendant's driver's license and automobile license plate numbers. Beam then took a shotgun from his car and returned to the Blitz car and its occupants. Another officer arrived and took charge of the shotgun while Beam conducted an apparently limited search of the suspects. When even more officers arrived, one of them, Joe McDaniel, searched the suspects again, this time revealing a knife concealed on the person of Michael, who was arrested. At this point Beam formally placed defendant under arrest, and the officers began searching the interior of the car. McDaniel and Beam obtained the key to the trunk, which they unlocked and searched, eventually finding a brown grocery bag containing two plastic bags of a substance which appeared to be cannabis.

The State put forward several theories to justify the search; the theory which the majority evidently found persuasive was that Beam and McDaniel had probable

cause to search the trunk of the car for drugs. That theory, and therefore the majority's opinion, is irreconcilable with the controlling precedents of both this court and the United States Supreme Court as to what constitutes probable cause for such a search. See *Whiteley v. Warden* (1971), 401 U.S. 560, 28 L. Ed. 2d 306, 91 S. Ct. 1031; *Spinelli v. United States* (1969), 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584; *Recznik v. City of Lorain* (1968), 393 U.S. 166, 21 L. Ed. 2d 317, 89 S. Ct. 342; *Draper v. United States* (1959), 358 U.S. 307, 3 L. Ed. 2d 327, 79 S. Ct. 329; *People v. Thomas* (1975), 62 Ill. 2d 375. *Cf. People v. Clay* (1973), 55 Ill. 2d 501. See also LaFave, *Probable Cause From Informants: The Effects of Murphy's Law on Fourth Amendment Adjudication,* 1977 U. Ill. L.F. 1, 49-66.

When Beam first observed defendant's car, all he knew was that someone had told someone in the sheriff's office something about drugs being sold at a particular house. This "tip" lacked the "sufficient detail" necessary to indicate "that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation" (*Spinelli v. United States* (1969), 393 U.S. 410, 416, 21 L. Ed. 2d 637, 644, 89 S. Ct. 584, 589). Even if the tip had come to him through a trusted superior (and Beam had no idea where he had heard it), he was not entitled to rely upon it. See *Whiteley v. Warden* (1971), 401 U.S. 560, 565-66, 28 L. Ed. 2d 306, 310-12, 91 S. Ct. 1031, 1035.

Beam's subsequent observations added little or nothing to the tip. Certainly the comings and goings of cars to a location rumored to be the site of criminal activity did not add anything. (See generally *Recznik v. City of Lorain* (1968), 393 U.S. 166, 21 L. Ed. 2d 317, 89 S. Ct. 342.) The paper bag (which defendant claimed to have put on the back seat) was not incriminating. Nor did the obscured license plate, the broken light, or even the discovery of

Michael's knife and radio add anything to corroborate the alleged tip. Although "information gathered by the arresting officers can be used to sustain a finding of probable cause for an arrest that could not adequately be supported by the tip alone," "the additional information acquired by the arresting officers must in some sense be corroborative of the informer's tip that the arrestees committed the felony or, as in *Draper* itself, were in the process of committing the felony." (*Whiteley v. Warden* (1971), 401 U.S. 560, 567, 28 L. Ed. 2d 306, 312-13, 91 S. Ct. 1031, 1036. Accord *People v. Thomas* (1975), 62 Ill. 2d 375, 378.) Here, the information gathered by Beam did not corroborate anything. Of course, the tip itself was so meager that there was little which he could corroborate. In short, Beam did not have probable cause to believe that he would find drugs in the trunk.

The majority evidently did not reach the State's argument that the search of the locked trunk was incident to the traffic arrest. In light of my position on the question of probable cause, however, I do reach that argument, and reject it. The locked trunk clearly contained neither potential threats to the safety of the arresting officers nor evidence of the alleged crime of driving with a broken license plate light, and the trial court properly so found. (*Chimel v. California* (1969), 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034; *People v. Hendrix* (1974), 25 Ill. App. 3d 339.) Moreover, there is a serious question as to whether a full search of the car and trunk is justifiable on the basis of its being "incident" to a mere traffic arrest:

> "Unlike searches of the person, *United States v. Robinson,* 414 U.S. 218 (1973); *United States v. Edwards,* 415 U.S. 800 (1974), searches of possessions within an arrestee's immediate control cannot be justified by any reduced expectations of privacy caused by the arrest." *United States v. Chadwick* (1977), 433 U.S. 1, 16 n.10, 53

L. Ed. 2d 538, 551 n.10, 97 S. Ct. 2476, 2486 n.10.

The majority's reliance on *People v. Brown* (1967), 38 Ill. 2d 353, to justify this search is particularly misplaced, since *Brown* dealt primarily with whether a warrant was necessary to search a car, and also involved a car which had no license plates at all. To equate a broken license plate light with the total absence of license plates as grounds for a full search of the car and trunk is to suggest that police officers may use a driver's violation of any one of hundreds of seldom-enforced traffic ordinances as a pretext for searching any car they feel like searching. This court has not adopted such a wholesale abandonment of the requirements of the fourth amendment with regard to automobiles. See, *e.g., People v. Erickson* (1964), 31 Ill. 2d 230.

Finally, the majority has ignored the impact of the trial court's finding that probable cause to search the trunk was lacking. There were factual disputes which the trial court must have resolved in reaching its decision to suppress the fruits of this search. By reversing that decision, the majority has cast a shadow upon the long-established rule that the trial court's findings of fact in connection with a motion to suppress evidence will not be overturned by a reviewing court unless manifestly erroneous. See, *e.g., People v. Williams* (1974), 57 Ill. 2d 239, 246; *People v. Clay* (1973), 55 Ill. 2d 501, 505; *People v. Dailey* (1972), 51 Ill. 2d 239, 242; *People v. Brooks* (1972), 51 Ill. 2d 156, 165; *People v. Johnson* (1970), 44 Ill. 2d 463, 470; *People v. Daily* (1968), 41 Ill. 2d 116, 120; *People v. Henderson* (1965), 33 Ill. 2d 225, 229.

One factual dispute concerned whether Beam actually had observed what he testified he had observed. Beam testified that he saw defendant put a paper bag in the trunk. The defendant testified that he put the bag on the

back seat. The trial court was not required to find the deputy sheriff to be inherently more credible than the defendant. Indeed, there was other evidence in the record which might have cast doubt upon Beam's credibility, *e.g.,* Beam's testimony regarding whether there was such a bag in the back seat was, at best, equivocal. Also, there was a significant inconsistency between Beam's testimony at the preliminary hearing and at the suppression hearing regarding whether the radio was tuned to the police band. Thus, it is not insignificant that the trial court kept referring to the bag having been put "in the back" of the car, rather than in the trunk. At the very least therefore, I would remand the cause to the circuit court with directions to enter findings of fact as to whether Beam actually had observed what he testified he had observed. I would further direct that if the court finds that Beam did not observe the bag being placed in the trunk, the defendant's motion to suppress should be granted. Of course, even if Beam did see what he testified he saw, I do not believe that he had grounds to search the trunk. I therefore respectfully dissent.

MR. JUSTICE MORAN, also dissenting:

Here, the trial court concluded that the warrantless search of the trunk was not a weapons search, and that the real reason for the traffic stop was to determine whether defendant's car was carrying drugs. This conclusion was well supported by the admissions of Beam. The court further determined that the tip of an unidentified informer was insufficient to provide probable cause to search the vehicle, "particularly the locked trunk." It is clear that the standards for a finding of probable cause for a warrantless search are as strict as those under which a magistrate may issue a search warrant. Indeed, the United States Supreme Court has indicated a strong preference to be accorded searches under a warrant. "[I]n a doubtful or marginal

case a search under a warrant may be sustainable where without one it would fall." *United States v. Ventresca* (1965), 380 U.S. 102, 106, 13 L. Ed. 2d 684, 687, 85 S. Ct. 741, 744.

This general preference for searches pursuant to a warrant is modified to the extent that exigent circumstances may justify a warrantless search of an automobile where a warrantless search of a dwelling would not be justified. (*Chambers v. Maroney* (1970), 399 U.S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975; *Carroll v. United States* (1925), 267 U.S. 132, 69 L. Ed. 543, 45 S. Ct. 280.) The automobile's mobility and the risk of loss of evidence is the underlying rationale, but with or without a warrant, "[a]utomobile or no automobile, there must be probable cause for the search." (*Almeida-Sanchez v. United States* (1973), 413 U.S. 266, 269, 37 L. Ed. 2d 596, 600-01, 93 S. Ct. 2535, 2537-38.) This principle has lately been reacknowledged in *Texas v. White* (1975), 423 U. S. 67, 46 L. Ed. 2d 209, 96 S. Ct. 304, and *United States v. Martinez-Fuerte* (1976), 428 U.S. 543, 49 L. Ed. 2d 1116, 96 S. Ct. 3074.

The cases of *Aguilar v. Texas* (1964), 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509, and *Spinelli v. United States* (1969), 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584, set the minimum standards under the Federal Constitution for the issuance of a search warrant in cases where an informer's tip is part of the basis for the magistrate's finding of probable cause. If the standards enunciated in *Aguilar* and *Spinelli* are the minimum for a search warrant, it follows that a warrantless search, in like circumstances, must at least meet those standards.

*Aguilar* established a two-pronged test: a warrant may issue where the affidavit in support thereof informs the magistrate of (1) facts upon which the affiant rests his conclusion that the informer is credible or his information reliable, and (2) the underlying circumstances upon which

the informer based his conclusion of criminal activity. (*Aguilar v. Texas* (1964), 378 U.S. 108, 114, 12 L. Ed. 2d 723, 729, 84 S. Ct. 1509, 1514; *Spinelli v. United States* (1969), 393 U.S. 410, 416, 21 L. Ed. 2d 637, 643, 89 S. Ct. 584, 589.) In *Aguilar,* two police officers applied for a warrant to search the petitioner's home for narcotics. The affidavit in support of their application stated that they had received reliable information from a credible person that narcotics were being kept on the premises. The court pointed out that, to support a finding of probable cause, the magistrate must base his conclusion on *facts and circumstances* revealed to him under oath or affirmation, and mere affirmation of belief or suspicion is not enough. (*Aguilar v. Texas* (1964), 378 U.S. 108, 112, 12 L. Ed. 2d 723, 727, 84 S. Ct. 1509, 1512.) The mere conclusion in the *Aguilar* affidavit that the subject possessed narcotics "was not even that of the affiant himself; it was that of an unidentified informant. The affidavit here not only 'contains no affirmative allegation that the affiant spoke with personal knowledge of the matters contained therein,' it does not even contain an 'affirmative allegation' that the affiant's unidentified source 'spoke with personal knowledge.' For all that appears, the source here merely suspected, believed or concluded that there were narcotics in petitioner's possession." *Aguilar v. Texas* (1964), 378 U.S. 108, 113-14, 12 L. Ed. 2d 723, 728, 84 S. Ct. 1509, 1513.

In the case at bar, the bare assertion of an informer's tip, as revealed to the trial court, was patently insufficient to support a finding of probable cause, for it satisfies neither of the two prongs of the *Aguilar* test. Beam could neither identify the informer nor remember who in the sheriff's department had relayed the tip. His conclusional statement that a reliable, unidentified informer had told the sheriff's office that drug traffic was emanating from the Kraft house does not provide *facts* or *circumstances*

from which the court could conclude that the informer was credible or his information gained in a reliable manner. Beam's assertion that the house had been under surveillance for a week does not of itself cure the defect. For a court to accept Beam's or the sheriff's department's inferences that the tip was from a reliable source, without any knowledge of the underlying circumstances from which the inferences were drawn, would be to remove the determination of probable cause from a neutral and detached source and allow it to be made by a police officer " '*** engaged in the often competitive enterprise of ferreting out crime.' " (*Spinelli v. United States* (1969), 393 U.S. 410, 415, 21 L. Ed. 2d 637, 643, 89 S. Ct. 584, 589.) The circumstances presented here likewise fail to meet the second *Aguilar* test: there was no testimony whatsoever regarding the circumstances under which the informer drew his conclusion of criminal activity.

The State apparently concedes that the informant's tip was insufficient basis for a finding of probable cause under *Aguilar*. Instead, it argues that any insufficiency in the tip could be, and was, remedied by corroborative information gleaned by Officer Beam. In *Spinelli*, the court announced that a tip, insufficient under the *Aguilar* tests but adequately corroborated by police investigation, could be properly considered as a basis for a finding of probable cause.

In *Spinelli*, the informer's tip—held inadequate under both *Aguilar* tests—indicated simply that the FBI "has been informed by a confidential reliable informant that William Spinelli is operating a handbook and accepting wagers and disseminating wagering information by means of the telephones which have been assigned to the numbers WYdown 4-0029 and WYdown 4-0136." (*Spinelli v. United States* (1969), 393 U.S. 410, 414, 21 L. Ed. 2d 637, 642, 89 S. Ct. 584, 588.) The "corroborative" information relied upon to validate the inadequate tip,

indicated, briefly, that (1) the FBI had maintained surveillance of Spinelli's movements for five days, on four of which Spinelli crossed from Illinois to St. Louis, Missouri, between 11 a.m. and 12:15 p.m., was seen parking his car in a parking lot used by residents of a specified building, and was once seen to enter a particular apartment therein; (2) the FBI check with the telephone company revealed that the apartment contained phones with numbers indicated in the tip; (3) Spinelli was known to Federal and local law-enforcement agents as a bookmaker and gambler. The Supreme Court pointed out that there could be no question that the informant's tip had "a fundamental place in this warrant application. Without it, probable cause could not be established. The first two items [as above] reflect only innocent-seeming activity and data. *** Finally, the allegation that Spinelli was 'known' to the affiant and the other federal and local law enforcement officers as a gambler and an associate of gamblers is but a bald and unilluminating assertion of suspicion that is entitled to no weight in appraising the magistrate's decision." *Spinelli v. United States* (1969), 393 U.S. 410, 414, 21 L. Ed. 2d 637, 642-43, 89 S. Ct. 584, 588.

The court held that the informant's tip, even when corroborated to the extent indicated, was insufficient to provide a basis for a finding of probable cause. It reiterated that the corroborative bits of information supplied by the FBI contained "no suggestion of criminal conduct when taken by themselves—*and they are not endowed with an aura of suspicion by virtue of the informer's tip.*" (Emphasis added.) (*Spinelli v. United States* (1969), 393 U.S. 410, 418, 21 L. Ed. 2d 637, 645, 89 S. Ct. 584, 590.) With the *Spinelli* standard in mind, it is profitable to test for the existence of probable cause as each bit of corroborative information was accumulated.

As detailed above, the informer's tip alone would not

have afforded Officer Beam probable cause to initially search the Kraft home. The officer, thereafter, observed four to six cars stop at the Kraft house, their occupants enter and leave within 5 to 10 minutes. This information, like the innocent-appearing coming and going of Spinelli, is clearly not of itself indicative of criminal activity. No probable cause therefore would have existed to search the Kraft home itself at this point. At 7:30 on the Sunday evening in question, defendant drove to the Kraft house. He and another entered, stayed a few minutes, and exited, according to Beam, carrying an "object" (later stated by Beam to be a brown paper bag) which was allegedly put in the trunk of the car. Again, this surely is not indicative of criminal activity. However, at this point the majority concludes that the totality of the circumstances provided probable cause to search defendant's trunk—a feeling apparently not shared by Beam. Beam felt constrained to follow the defendant and the four others in the car for the six-mile drive to Steeleville. During that period, he noticed that the rear license-plate light of defendant's car was out and the license partially obstructed by a trailer hitch. He determined to stop the defendant's car. Although this was ostensibly a mere traffic stop, he twice radioed for assistance to meet him in Steeleville. At the time of his calls, he observed the occupants of the car looking around, although he was in an unmarked car. Certainly it cannot be said that looking around is an occurrence indicating or corroborating criminal activity. When Beam reached Steeleville, he turned on his dashboard flasher. Defendant immediately pulled his car to the curb, exited, and approached Beam's car at what Beam termed a "fast walk." Defendant appeared shaky or nervous to Beam. Innocent concern over being stopped by the police would be expected. Nervousness, under these circumstances, without other indications of criminal activity, is insufficient to corroborate the tip. (See *People v. Reed* (1967),

37 Ill. 2d 91, where the defendant's nervousness and his repeated glances at his automobile were held inadequate justification for the search of his car after a stop for a vehicular violation.)

Officer Beam then approached defendant's auto with defendant, heard voice sounds from the eight-band shortwave radio in the car, and observed defendant's brother turn a knob on the radio. The record reveals that Beam "assumed," rather than heard, that the radio had been tuned to the police band. He further assumed that the occupants had intercepted his requests for police assistance. The presence of a shortwave radio capable of receiving police messages is not a crime, and is certainly no more unusual or indicative of criminal activity than was the presence of two telephones in the apartment under surveillance in *Spinelli.* There the court aptly observed that "[m]any a householder indulges himself in this petty luxury." *Spinelli v. United States* (1969), 393 U.S. 410, 414, 21 L. Ed. 2d 637, 642-43, 89 S. Ct. 584, 588.

Under *Spinelli,* the circumstances related above must be judged without the incriminating aura of the inadequate informer's tip. Without that aura, these so-called corroborating facts are clearly insufficient to support a finding of probable cause to search defendant's car or trunk.

It is, in fact, questionable whether any weapons search was justified here, inasmuch as the circumstances did not indicate that the occupants were armed and dangerous or that they were involved in a violent crime. (See *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868.) The informer's tip did not so indicate. Beam clearly conceded that the search of the trunk was not a weapons search. He frankly stated that he searched the trunk only for drugs. Probable cause to search the trunk was, however, still lacking. The finding of the hunting knife by another officer during a second search of defendant's brother did not logically corroborate the informer's tip or

Beam's suspicion that the auto contained cannabis. Thus, the search of the locked trunk cannot be justified either as a weapons search or as a search for drugs based on probable cause.

In an alternative attempt to establish legal justification for the search of the trunk, the State in essence asserts that there was probable cause where the "circumstances surrounding defendant's arrest gave the appearance of criminal activity." At oral argument, it was asserted that such criminal activity was evidenced by the "totality of the circumstances." Such a theory was a foundation of the court of appeals opinion in *Spinelli* and was explicitly rejected by the Supreme Court in circumstances "[w]here, as here, the informer's tip is a necessary element in a finding of probable cause ***." *Spinelli v. United States* (1969), 393 U.S. 410, 415, 21 L. Ed. 2d 637, 643, 89 S. Ct. 584, 588.

The traffic violation for which defendant was ostensibly stopped was an inoperative license-plate light and partial obstruction of the plate by a trailer hitch. It was conceded by the State at oral argument to be the kind of violation routinely handled by a brief stop and the issuance of a traffic ticket. Forgetting Beam's admission that the stop was not for the traffic violation but to allow him to search the trunk, and disregarding, as we must, the suspicion derived from the inadequate tip, there were no circumstances surrounding the stop which would have justified the officer in concluding he was dealing with other than an ordinary traffic violator. Unlike the total absence of license plates, which could indicate car theft, the traffic offense here is not of the serious nature which of itself would reasonably justify a conclusion of criminal activity. (Compare *People v. Palmer* (1976), 62 Ill. 2d 261, with *People v. Reed* (1967), 37 Ill. 2d 91.) The State cites *People v. McKnight* (1968), 39 Ill. 2d 577, as a comparable traffic stop where a search was justified. However, in that

case there were additional factors not present in the case at bar. In *McKnight,* the actual reason for the traffic stop was the traffic violation—the absence of a license-plate light. Thus the traffic stop was not a mere pretext for stopping and searching the auto for contraband. Further, the circumstances which developed out of the stop in *McKnight* were themselves indicative of criminal activity. When the car was stopped and the police turned a spotlight on the car, the defendant changed hands on the steering wheel and brought his arm and shoulder down in a dipping motion as though stashing something under the front seat of the car. The defendant there told the police that he had borrowed the car from a friend but did not know the friend's address. In the presence of these facts, the police could reasonably suspect that they were dealing, not with an ordinary traffic violator, but with a car thief, and could pat down defendant and his companion for weapons. The presence of a gun in the right front pants pocket of the defendant's companion when he stepped out of the car was an important, but *additional,* factor in the court's finding of probable cause to search the car subsequent to the defendant's arrest.

The circumstances of the traffic stop in this case were critically different. Again, untainted by the aura of the inadequate tip, they reveal nothing but the presence of an ordinary traffic violation. The trial court found, and it is clearly not against the manifest weight of the evidence, that the traffic arrest was a pretext for the police to search the automobile for cannabis. Lacking probable cause for such a search, the search cannot be justified under these circumstances as incident to a lawful custodial arrest. (*Cf. United States v. Robinson* (1973), 414 U.S. 218, 38 L. Ed. 2d 427, 94 S. Ct. 467; *Gustafson v. Florida* (1973), 414 U.S. 260, 38 L. Ed. 2d 456, 94 S. Ct. 488, where certain searches incident to full custodial arrest for traffic violations were held permissible.)

It has been observed by various courts that the circumstance of most frequent contact between citizen and police in this country is incident to a stop for a minor traffic violation. To allow the police to engage in a full-scale search of a vehicle and a "spread-eagle" search of its occupants incident to a traffic stop where the circumstances—if the subjects were on foot—would not support a finding of probable cause to search, would cut deeply into the fourth amendment privileges enjoyed by the citizens of this country. Where, as here, the trier of fact determines that a traffic stop is a pretext for an investigation of other suspected activity, this court should closely scrutinize any search which follows for justification of the search independent of the traffic stop (see *People v. Watkins* (1960), 19 Ill. 2d 11), for "those charged with *** investigative and prosecutorial duty should not be the sole judges of when to utilize constitutionally sensitive means in pursuing their tasks." *United States v. United States District Court* (1972), 407 U.S. 297, 317, 32 L. Ed. 2d 752, 766, 92 S. Ct. 2125, 2136.

I would therefore affirm the judgment of the appellate court.

MR. JUSTICE GOLDENHERSH joins in this dissent.