No. 3-09-0396

Opinion filed December 21, 2010.

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2010

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the Twelfth Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 08-CF-2005 |
| DENNIS A. HACKETT, | ) ) | The Honorable Carla Alessio Policandriotes, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE McDADE delivered the judgment of the court, with opinion.
Justice O'Brien concurred in the judgment and opinion.
Justice Schmidt dissented, with opinion.

**OPINION**

The State charged defendant, Dennis A. Hackett, with aggravated driving under the influence and aggravated driving while license revoked. The circuit court of Will County granted defendant's motion to quash arrest and to suppress evidence on the grounds police lacked probable cause to stop defendant's vehicle. For the following reasons, we affirm.

BACKGROUND

At the hearing on defendant's motion to quash arrest and suppress evidence, Deputy Michael Blouin of the Will County sheriff's police testified that he was driving his unmarked

police vehicle northbound on Briggs Street near Maple in Will County when he observed defendant's vehicle traveling north on Briggs directly in front of him. Blouin described Briggs as a straight, four-lane roadway with two lanes of northbound traffic and two lanes of southbound traffic. The north and south lanes are marked by a divider and the two northbound lanes of traffic are divided by black and white stripes. Blouin first observed defendant's vehicle in the right-hand northbound lane of traffic. Defendant crossed into the left-hand northbound lane and Blouin maneuvered his vehicle to follow behind defendant.

Blouin testified that after entering the left-hand northbound lane, he observed defendant's vehicle move to the right. Blouin testified that defendant's vehicle's right-side tires crossed the black-and-white-striped lane divider between the two northbound lanes of traffic on Briggs. Defendant's vehicle then moved back into the left-hand lane. Blouin testified that five seconds later, defendant's right-side tires again crossed the black-and-white-striped lane divider. Blouin could not recall how far defendant's vehicle crossed into the right-hand lane of northbound traffic on Briggs. Blouin stated that defendant's tires "slightly" crossed the lane divider. Blouin testified that both times, defendant's vehicle "barely" went over the black-and-white-striped lane divider and that both times, defendant's tires crossed the line for a matter of seconds.

Based on his observations of defendant's vehicle crossing the lane divider between the two northbound lanes of traffic on Briggs, Deputy Blouin decided to stop defendant's vehicle for a traffic violation. Blouin testified that he did not stop defendant's vehicle after the first time he observed defendant's vehicle cross the lane divider but that he did decide to stop defendant after defendant "swerved a second time" because, in his opinion, if a vehicle "swerves" twice there is usually a problem with the driving. Blouin did not, however, stop defendant immediately after he

"swerved a second time." Rather, he followed him. While Blouin did not specifically recall Hackett's turn indicators flashing or his stopping for lights, he testified that had he seen violations, he would have ticketed defendant for them. Thus the evidence supports finding that after defendant's two momentary swerves Blouin continued to follow him while defendant, without committing any traffic violation, negotiated (1) the move into the left turn lane, (2) two left turns, and (3) compliance with the laws concerning lane usage, speed limit, turn signals, and traffic signals.

ANALYSIS

Following the hearing on the motion, the trial court granted defendant's motion to quash arrest and suppress evidence.

"On appeal, a trial court's factual findings concerning a motion to suppress will be upheld unless they are against the manifest weight of the evidence. [Citation.] The ultimate decision, however, concerning whether the evidence should have been suppressed is a question of law, which we review *de novo*. [Citation.]

A peace officer may conduct a lawful traffic stop based on probable cause that the driver of the vehicle has committed a traffic violation. [Citation.]" *People v. Matous*, 381 Ill. App. 3d 918, 921-22 (2008), citing *Illinois v. Caballes,* 543 U.S. 405 (2005).

The State argues that Blouin had probable cause to believe that defendant violated section 11-709(a) of the Illinois Vehicle Code (Code) (625 ILCS 5/11-709(a) (West 2006)).

"Whenever any roadway has been divided into 2 or more clearly marked lanes for traffic the following rules in addition to all others consistent herewith shall apply.

(a) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." 625 ILCS 5/11-709(a) (West 2006).

Defendant argues, based on his testimony, that in the area he was driving, Briggs is in poor condition and that he may have been taking evasive action to avoid potholes. The State argues that Blouin testified that he did not see any potholes or obstructions that would cause a driver to deviate from a lane of traffic. The State argues that absent obstructions that would cause a driver to deviate from a lane of traffic, an officer's observation of a vehicle crossing the lane divider provides the officer with grounds for a traffic stop based on a violation of section 11-709(a).

In *People v. Halsall*, 178 Ill. App. 3d 617, 618 (1989), the officer testified that he observed the defendant's vehicle traveling on the left-hand side of the road. The car slowly drifted into the right lane. The defendant in that case drove his vehicle once across the center line and, after increasing his speed to an estimated 70 miles per hour, crossed the center line two more times. The testimony in that case was that when the defendant crossed the center line, approximately one-half of his car was over the line. *Halsall*, 178 Ill. App. 3d at 618.

This court found that there was no evidence that when the defendant in *Halsall* moved outside of his lane he endangered himself, pedestrians, or other vehicles. Based on that finding,

-4-

this court held that "the State failed to prove that when the defendant moved outside of his lane he did so without first determining that the movement could be made safely" (*Halsall*, 178 Ill. App. 3d at 619) and reversed the judgment of conviction for improper lane usage (*Halsall*, 178 Ill. App. 3d at 620). See also *People v. Albright*, 251 Ill. App. 3d 341, 343 (1993) ("This court has held that improper lane usage does not occur unless the defendant endangers himself, pedestrians, or other vehicles when he moves out of his lane of traffic").

The driving in both *Halsall* and *Albright* was potentially more dangerous than defendant's driving in the case before us now. Blouin provided no testimony concerning other vehicles or pedestrians on Briggs at the time he observed defendant's driving. Blouin could not testify how far defendant's tires crossed the dividing line. By contrast, in *Albright*, the defendant crossed the line on the right side by at least a tire width on three separate occasions. *Albright*, 251 Ill. App. 3d at 342. Even were we to assume the presence of vehicles or pedestrians, Blouin admitted that defendant's encroachment into another lane of traffic was slight and brief, lasting a total of mere seconds. Thus, under *Halsall* and *Albright*, we would affirm the trial court's judgment that Blouin did not have probable cause to believe that defendant had committed a traffic violation and affirm the order granting defendant's motion to quash arrest. The questions we are confronted with are (1) whether our decisions in those cases remain valid following the supreme court's decision in *People v. Smith*, 172 Ill. 2d 289, 297 (1996), and (2) whether *Smith* requires reversal of the trial court in the instant case.

In *Smith*, the defendant was observed by a police officer leaving a tavern, getting in his car and driving away. The officer, suspecting impairment, followed defendant as he drove on a four-lane, two-way street with a fifth lane in the center northbound and southbound for turning. The

officer observed the driver's side wheels of the defendant's car cross over the lane line dividing the left lane from the center turn lane by at least six inches and remain over the lane line for approximately 100 to 150 yards--the length of 1 to 1 1/2 football fields. A short time later, the defendant crossed over the lane line dividing the left lane from the right lane by approximately six inches for 150 to 200 yards. *Smith*, 172 Ill. 2d at 293. Thus, the defendant in *Smith* was driving significant distances in all three lanes of traffic–sometimes with his vehicle in the left and right lanes and sometimes in the left and center turn lanes. The police officer testified that the defendant did not endanger any other vehicles or persons when he deviated across the lane lines and verified that the defendant never completely left the center lane in which he was traveling. *Smith*, 172 Ill. 2d at 293.

The defendant in *Smith* argued that a violation of section 11-709(a) does not occur when a motorist momentarily crosses over a lane line, but occurs only when a motorist endangers others while moving from a lane of traffic. *Smith*, 172 Ill. 2d at 296. Our supreme court held that "[t]he plain language of the statute establishes two separate requirements for lane usage. First, a motorist must drive a vehicle *as nearly as practicable* entirely within one lane. Second, a motorist may not move a vehicle from a lane of traffic until the motorist has determined that the movement can be safely made." (Emphasis added.) *Smith*, 172 Ill. 2d at 296-97. The court concluded that "[i]t follows that when a motorist crosses over a lane line *and* is not driving as nearly as practicable within one lane, the motorist has violated the statute." (Emphasis added.) *Smith*, 172 Ill. 2d at 297.

In light of this language in *Smith*, it seems clear that our earlier decisions in *Halsall* and *Albright* would no longer be valid. In both of those cases, the drivers had encroached

-6-

significantly into a second lane *and* had proceeded an appreciable distance in two lanes.

Turning to the question of whether *Smith* requires reversal of the trial court in the instant case, we do not read *Smith* as holding that any time a motorist veers momentarily and minimally over a lane line he or she is driving in more than one lane of traffic. There are too many innocent circumstances that might cause a motorist to momentarily and inadvertently inch across a lane divider to find that such action, without more creates probable cause to arrest.

Based on the evidence in the instant record we cannot find that any police officer in Blouin's position could have *reasonably* believed that defendant was driving in more than one lane within the meaning of the statute and therefore committed the traffic violation for which he was stopped.

> "Where a traffic stop is based upon a mistake of law, it is
> unconstitutional. However, this may not resolve the issue. An
> otherwise improper stop based on a mistake of law may be found
> reasonable and constitutional if 'the facts known to [the officer]
> raised a reasonable suspicion that the defendant was in fact
> violating the law as written.' [Citation.] A police officer may stop
> a vehicle where he has reasonable suspicion to believe a driver is
> violating the Vehicle Code. [Citation.] Reasonable suspicion exists
> where an officer possesses specific, articulable facts that, when
> combined with rational inferences derived from those facts, give
> rise to a belief the driver is committing a traffic violation." *People*
> *v. Mott*, 389 Ill. App. 3d 539, 543-44 (2009).

First, Blouin provided no testimony from which to find that an officer in his position could reasonably believe that defendant engaged in improper lane usage. We fully accept and apply the supreme court's finding that section 11-709(a) creates "two separate requirements for lane usage" including the independent requirement that "a motorist must drive *** as nearly as practicable entirely within one lane." *Smith*, 172 Ill. 2d at 296-97. We construe *Smith*, we believe properly and consistently with the supreme court's intent, to apply to situations like the one presented to the court in *that* case, where the driver of the vehicle actually drives for some reasonably appreciable distance in more than one lane of traffic.

Our reading of *Smith* is supported by the supreme court's own language. It specifically held that "[o]nce [the officer] saw [the] defendant cross over a lane line *and drive in two lanes of traffic*, [he] had probable cause to arrest [the] defendant for a violation of the Code." (Emphasis added.) *Smith*, 172 Ill. 2d at 297. We do recognize and take note that the supreme court did not specify how far a vehicle must encroach a second lane of traffic or how long a vehicle must travel in two lanes of traffic to establish probable cause to arrest the driver for a violation of the Code. To answer that question, we turn to the holding in *Smith*–again, in an effort simply to be consistent with the language the supreme court chose in its judgment. Based entirely on what we reasonably believe the supreme court intended by its own language in its judgment in *Smith*, we must find that the court would hold that probable cause exists to find that a driver has failed to drive "as nearly as practicable entirely within one lane" when "a reasonable, prudent man in possession of the knowledge of the arresting officer would believe that [the] offense has been committed." *Smith*, 172 Ill. 2d at 297, citing *People v. Robinson*, 62 Ill. 2d 273, 276 (1976).

In this case, by Blouin's own admission, defendant's tires only slightly crossed the lane

divider for mere seconds before defendant continued to operate his vehicle entirely in the left-hand lane of traffic. Instructive and in stark contrast is *Smith*, where the defendant drove with his wheels straddling the lane dividers by six inches on opposite sides of the street on two separate occasions, effectively driving in three lanes of traffic for approximately 150 yards each time. With regard to the second requirement of the statute, nothing in Blouin's testimony provides any bases to find that if defendant did change from the left lane of traffic to the right, however briefly, he did not do so without first determining that it was safe. The evidence does not provide grounds upon which to find that defendant's driving endangered himself, pedestrians, or other vehicles at any time.

Thus, we conclude that Officer Blouin lacked probable cause to stop defendant for a violation of section 11-709(a). "An officer may conduct a *Terry* traffic stop if the officer has a reasonable, articulable suspicion that *** (3) the vehicle *** is subject to seizure for violation of a law." *People v. Matous*, 381 Ill. App. 3d 918, 922 (2008). The violation of law for which Blouin stopped defendant did not occur, and no police officer in Blouin's position could have reasonably believed that the violation occurred. Accordingly, we would also find that the facts and circumstances surrounding the traffic stop did not provide a reasonable, articulable suspicion to stop defendant based on Blouin's stated reason of a violation of section 11-709(a).

We find that *Smith* does not compel a different result. In so holding, we acknowledge that Hackett was drunk and the confirmation of his inebriation was the basis for his Motion to Suppress which the trial court granted. That fact should not, however, drive our construction of the statute. Accordingly, we hold that the trial court properly granted defendant's motion to quash arrest and suppress evidence.

Contrary to the dissent's implication, our decision is not based on whether or not defendant swerved to avoid a pothole. Our decision is based on our finding that Blouin was mistaken in his belief that defendant's driving violated the law in question. The dissent[1] asserts that "[c]learly, the officer had probable cause to stop the defendant for improper lane usage." Slip dissent at 9. We acknowledge the attractiveness of the dissent's legal "conclusion" given that, literally, when one's left tires are in the left lane and right tires are in the right lane, however slightly or briefly, one is not entirely in a single lane of traffic. However, we disagree with the dissent's conclusion that *Smith* held that merely permitting one's tires to briefly cross the center line is a *per se* violation of the statute because one is not driving "as nearly as practicable entirely within one lane" or that such action constitutes driving in two lanes of traffic within the meaning of the improper lane usage statute.

Thus, we clarify that our finding is not that Blouin provided no testimony from which to find that all parts of defendant's vehicle were not at all times physically within a single lane of traffic, but rather that Blouin provided no testimony from which to find that an officer in his position could reasonably believe that defendant was actually driving in two lanes and was therefore engaged in improper lane usage in violation of the statute. Based on Blouin's testimony and consistent with *Smith*, we hold that the trial court properly granted defendant's motion to

[1] The dissent, typically and predictably, resorts to ridicule, hyperbole, personal anecdotes and observations, assaults on positions not taken by the majority, quotes taken out of context, and facts outside the record to attack a legal analysis with which he does not agree. If the majority decision is indeed wrong, it should be possible to demonstrate that error in a mature and professional counteranalysis.

quash arrest and suppress evidence.

CONCLUSION

The circuit court of Will County's order is affirmed.

Affirmed.

JUSTICE SCHMIDT, dissenting:

This case should have been resolved by a summary order reversing the trial court and remanding for further proceedings. *Smith* and the plain language of the statute control. A police officer stopped defendant after watching defendant swerve twice across a lane divider line. The roadway was flat and straight. The second swerve took place approximately five seconds after the first. Each time defendant swerved, both right tires crossed the lane divider line. The officer could see space between the lane divider line and defendant's right tires. Defendant was ticketed for improper lane usage and ultimately charged with aggravated DUI (625 ILCS 5/11--501(a)(2) (West 2008)), and aggravated driving while license revoked (625 ILCS 5/6--303(d) (West 2008)). After a suppression hearing, the trial court found no probable cause for the traffic stop. The majority affirms.

The majority finds comfort in the fact that the officer noted no other violations concerning lane usage, speed limit, turn signals and traffic signals. These observations by the majority are totally irrelevant to the issue of whether the police officer had probable cause to stop the defendant for improper lane usage after the incidents he described.

The majority also states, "Thus the evidence supports finding that after defendant's two momentary swerves Blouin continued to follow him while defendant, without committing any traffic violation, negotiated (1) the move into the left turn, (2) two left turns, and (3) compliance

-11-

with the laws concerning lane usage, speed limit, turn signals, and traffic signals." Slip op. at 3. I am not sure of the import of the majority's observation here. It seems to be suggesting that the probable cause created by the two swerves over the lane divider somehow evaporated when defendant was able to make several other maneuvers without the officer observing any additional traffic violations. This is some interesting new law with no support in the existing law. The majority should explain how many legal maneuvers or how far a driver must drive after committing a traffic violation without committing another violation before the probable cause disappears. Police officers and prosecutors will undoubtedly want to know this. The fact is, from a legal standpoint, the officer's failure to note any additional traffic violations after the first two (or first one for that matter) is totally irrelevant to whether the officer had probable cause to stop the defendant for improper lane usage. I will add an experience-based observation that is undoubtedly just as irrelevant as the majority's observation. Once a police officer has made a determination to stop someone for whatever violation, the officer generally is not looking for other small violations, but is instead watching the driver and also watching and looking for an appropriate place to conduct the traffic stop. He or she is usually not intent upon seeing how many minor traffic violations can be racked up before the stop is effected. Once a decision to stop is made, officers start thinking about their own safety as well as the safety of the public in determining where or how to make the stop.

The majority states, "Defendant argues, based on his testimony, that in the area he was driving, Briggs is in poor condition and that he may have been taking evasive action to avoid potholes." Slip op. at 4. During defendant's direct examination by his own attorney, defendant testified as follows:

"Q. Can you describe the road conditions on Briggs street as you're heading northbound from that gas station to Second?

A. There are two lanes north, two lanes south in need of repair like many other roads in the Joliet area or probably most of Illinois.

Q. Did you notice potholes as you were proceeding northbound on Briggs?

A. There were several of them.

Q. Did you have to take any evasive action in your pickup truck to avoid driving straight into potholes?

A. There is a possibility, yes."

On cross-examination, the defendant was asked whether his tires could have touched or crossed over the centerline a second time. He said he did not believe so, but he thought one time was possible.

"Q. Is it possible that it happened twice?

A. I don't believe so.

Q. But one time it is possible?

A. Well, with the potholes and different things, I -- I would imagine that I probably did move towards the center of the road."

-13-

Even when coached by his own attorney during direct examination, defendant did not say that he swerved to avoid a pothole. His strongest testimony was that there was a possibility that he swerved to avoid a pothole. The police officer testified that he saw no potholes, did not hit any potholes, and did not need to take evasive action to avoid any potholes while driving behind defendant on Briggs Street. However, even ignoring the officer's testimony, we have no testimony from defendant that he had to swerve to avoid a pothole or any other obstruction. At best, this testimony by defendant goes to his guilt or innocence of the charge, not to probable cause.

The officer testified that when defendant swerved across the lane marker the second time, he decided to stop defendant for improper lane usage. While he was not as concerned with the first swerve, he felt the second swerve indicated a problem with defendant's ability to drive. This was an absolutely flawless exercise of judgment on the officer's part. Police officers do not stop every car for every minor traffic violation they see. This is common knowledge. However, the officer decided since defendant swerved partially into the right-hand lane twice within a very short period of time, that there was a problem.

In reaching its decision, the majority discusses two pre-*Smith* cases: *People v. Halsall*, 178 Ill. App. 3d 617, 533 N.E.2d 535 (1989), and *People v. Albright*, 251 Ill. App. 3d 341, 622 N.E.2d 60 (1993). As the majority points out, these cases stood for the proposition that improper lane usage does not occur unless defendant endangers himself, pedestrians, or other vehicles when he makes a move out of his lane of traffic. Slip op. at 4-5. The majority concedes that *Halsall* and *Albright* are no longer good law in light of *Smith*. Nonetheless, it states, "The driving in both *Halsall* and *Albright* was potentially more dangerous than defendant's driving in the case before

-14-

us now." Slip op. at 5. Of what possible relevance is a comparison to the defendant's driving here and the driving of the *Halsall* and *Albright* defendants?

In *Smith*, the supreme court specifically rejected defendant's argument "that a violation of section 11-709(a) does not occur when a motorist *momentarily* crosses over a lane line, but occurs only when a motorist endangers others while moving from a lane of traffic." (Emphasis added.) *Smith*, 172 Ill. 2d at 296. Our supreme court held that "Once [the officer] saw defendant cross over a lane line and drive in two lanes of traffic, [the officer] had probable cause to arrest defendant for a violation of the Code." *Smith*, 172 Ill. 2d at 297. Nonetheless, the majority "[does] not read *Smith* as holding that any time a motorist veers momentarily and minimally over a lane line he or she is driving in more than one lane of traffic." Slip op. at 7. Again, notwithstanding the clear language in *Smith*, the majority holds "[t]here are too many innocent circumstances that might cause a motorist to momentarily and inadvertently inch across a lane divider to find that such action, without more creates probable cause to arrest." Slip op. at 7. I could write a book about that sentence alone without touching the rest of the majority's result-orientated decision. We are not talking about murder or treason here, we are talking about violations of the traffic code in which the driver's good intentions and/or inadvertence are irrelevant. The legislature chose for a reason not to make intent an element of a traffic offense. It recognized the obvious: inadvertence kills.

The majority then makes an amusing run at distinguishing the case before us from *Smith*. Slip op. at 5-9. The *Smith* defendant wandered across lane lines twice. The supreme court spoke in terms of distance, rather than time. The first time across the lane line, defendant Smith's tires were at least six inches across the lane divider for a distance of 100 to 150 yards. *Smith*, 172 Ill.

-15-

2d at 293. On the second incident, the supreme court simply states that the officer saw the defendant cross over the lane line dividing the left lane from the right lane by approximately six inches for 150 to 200 yards. *Smith*, 172 Ill. 2d at 293. We do not know what the speed limit was on the highway being traversed by Smith. Therefore, we cannot be sure how long Smith had his tires across the lane line. Nonetheless, the majority finds that these were "significant" distances. Slip op. at 6.

The majority then goes on to state, "In this case, by Blouin's own admission, defendant's tires only slightly crossed the lane divider for mere seconds before defendant continued to operate his vehicle entirely in the left-hand lane of traffic. Instructive and in stark contrast is *Smith*, where the defendant drove with his wheels straddling the lane dividers by six inches on opposite sides of the street on two separate occasions, effectively driving in three lanes of traffic for approximately 150 yards each time." Slip op. at 8-9. First of all, with respect to the lateral intrusion into the neighboring lane, the *Smith* tire was six inches over the line. I have no idea how wide the majority thinks a truck tire is, but the officer in this case said he saw a space between the lane divider line and the vehicle's tire. He did not elaborate as to how much space he saw. Nor did he need to. It would be an unusual tire that was not at least six inches wide itself. Of course, in any normal vehicle, parts of the vehicle body extend beyond the outside of the tire. Clearly, parts of the defendant's vehicle had to have been well over six inches beyond the line. This would be true had the defendant been riding a motorcycle, let alone a motor vehicle. In fact, the testimony was that defendant was driving a pickup truck.

Secondly, with respect to the distance traveled forward while straddling the lane line, the majority points out that defendant here was over the line for "mere seconds" each time he crossed

-16-

the lane divider. Slip op. at 8. In a mere second, a vehicle traveling 30 miles per hour travels approximately 45 feet, one traveling 40 miles per hour travels approximately 60 feet, and one traveling 60 miles per hour travels approximately 90 feet. If the vehicle is across the lane divider for a mere four seconds and traveling at 40 miles per hour, the vehicle has traveled 240 feet or 80 yards. This is simple arithmetic, not quantum physics or rocket science. Where would the majority draw the line?

In another unbelievable sentence, the majority states, "We construe *Smith*, we believe properly and consistently with the supreme court's intent, to apply the situations like the one presented to the court in *that* case, where the driver of the vehicle *actually drives* for some reasonably appreciable distance in more than one lane of traffic." (Emphasis in original and added.) Slip op. at 8. I hate to be flip, but the majority invites it. This opinion would not stand-up to a Vinny Gambini cross-examination. I can only think of that renowned trial lawyer's cross-examination of witness Mr. Tipton regarding the time it took to cook grits on Tipton's stove. Vinny Gambini would undoubtedly ask whether the law of physics cease to exist on highways in the Third District allowing a vehicle to travel for four seconds with its tires in two separate lanes and yet not be "actually driving in more than one lane of traffic." Was this a magic pickup truck? Did the defendant buy his truck from the same guy that sold Jack his beanstalk beans? If the defendant was not actually driving in more than one lane of traffic, what was he "actually" doing? Just what is a reasonably appreciable distance? How does an officer decide? The majority leaves no workable rule.

I could write a four-volume dissent on this case, picking apart one silly sentence after another in the majority opinion. However, I will stop here. The thrust of the majority opinion is

that the majority believes that police should not be able to stop people for minor traffic violations. I suppose we all feel that way when we are stopped for one. This is the appellate court; we do not get to rewrite the law based upon our feelings about it. The supreme court and the legislature have that power. We do not. Clearly, the officer had probable cause to stop the defendant for improper lane usage. The supreme court's decision in *Smith* is not ambiguous. Whether the defendant inadvertently or intentionally swerved twice across the lane divider lane is irrelevant. The majority opinion stands the law on its head and creates a totally unworkable scheme for traffic law enforcement. Do we apply the same analysis to speeding? Must one speed for a "reasonably appreciable distance" to violate speed laws?

Illinois has five appellate courts and one supreme court. Our supreme court does not have the resources to correct every wrongly decided appellate decision. The majority undoubtedly is banking on the fact that the court will have more pressing matters before it and not grant a petition for leave to appeal on this matter. With all due respect, the majority opinion is nonsense, plain and simple. Even worse, it endangers the lives of the motoring public by limiting the ability of police officers to stop erratic drivers. I dissent.